UNITED STATES of America,
Plaintiff-Appellee,

v.

16.33 ACRES OF LAND IN the COUNTY OF DADE, STATE OF FLORIDA, STERLING INVESTMENTS, INC., Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

156.65 ACRES OF LAND IN the COUNTY OF DADE, STATE OF FLORIDA, STERLING INVESTMENTS, INC., Defendant-Appellant.

Nos. 75–3051 and 76–1464
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 2, 1977.

Robyn Greene, Rollo E. Karkeet, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Eva R. Datz, Dept. of Justice, Peter R. Taft, Asst. Atty. Gen., Jacques B. Gelin, Atty., Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Beginning in April 1970, the United States filed several complaints to condemn certain real estate in the Elliott Shores Subdivision on Elliott Key, in Dade County, Florida. The record title holders of the subdivision lots were designated as the defendant-landowners. Sterling Investments,

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

Inc. filed an answer asserting it was the fee simple owner of all the avenues, roads and boulevards of the platted but undeveloped subdivision. Sterling is the successor-in-interest to the original developer who dedicated the avenues, roads and boulevards to the public but retained a reversionary interest should their use as avenues, roads and boulevards ever be discontinued by law.

The District Court disallowed Sterling's claim and held that the conveyances by the original developer of "the lots abutting the streets and roads by reference to the plat carried title to the center of the abutting roadway subject to the rights in favor of the public all in accordance with the law of the State of Florida." R. at 627.

Because the federal condemnation case presented important questions concerning interests in real property under Florida law, we certified the case to the Florida Supreme Court. *U. S. A. v. 16.33 Acres of Land in the County of Dade, Florida,* 5 Cir., 1976, 537 F.2d 182. The Florida Court has now handed down its opinion answering the certified legal issue dispositive of the case. *U. S. A. v. 16.33 Acres of Land in the County of Dade, Florida,* Fla., 1977, 342 So.2d 476. The holding of the District Court is affirmed.

The detailed facts of this case are succinctly presented in our certification to the Florida Court. 537 F.2d 182. We certified some eight questions to the Florida Supreme Court.[1] The Court, however, found it unnecessary to answer all of the questions, because of the view it took of the case.

The Florida Supreme Court gave the following explicit answer:

"When Miami Bank, Sterling's predecessor in title, dedicated the platted roads "to the perpetual use of the public for proper purposes," it explicitly reserved to itself any reversionary interest, *as against the public.* Thereafter, all the lots in the plat were sold; and the deeds described the lots by reference to the

---

1. The following questions were submitted:

(3) *Questions of Law*:

1. Did Sterling's predecessor in title, Miami Bank and Trust Company, intend to convey its fee interest in the roads to the abutting landowners when it filed a plat containing a public dedication of the roads in Elliott Shores?

2. Is the evidence that Miami Bank and Trust Company intended to reserve a reversionary interest in the roads sufficient to overcome the rule of construction that a conveyance of a lot abutting a road passes a fee interest extending to the center of the road?

3. Was the acceptance of the 1926 dedication by Dade County in 1960 timely enough to be effective to complete the dedication?

4. If Miami Bank and Trust Company did retain a reversionary interest in the roads, has the dedication of the roads to the use of the public for proper purposes been "discontinued by law," by

(a) the condemnation itself, or

(b) the conveyance of Dade County's interest in the land to the federal government, or

(c) the disclaimer by Dade County of any interest in the roads in state court proceedings? Fla.Stat.Ann. § 336.12.

5. (a) If Miami Bank and Trust Company did retain a reversionary interest in the roads, did Sterling comply with Fla.Stat.Ann. § 177.085(2) to preserve its reversionary interest?

(b) If the answer to Question 5(a) is negative, is Fla.Stat.Ann. § 177.085(2) constitutional?

6. If Miami Bank and Trust Company did retain a reversionary interest in the roads does the presence of tax deeds in all but one of the abutting lot owners' chains of title terminate Sterling's reversionary interest? Fla.Stat.Ann. § 197.530(3), § 197.281(3).

7. (a) If Miami Bank and Trust Company did retain a reversionary interest in the roads, do the abutting lot owners in fact have a compensable interest in the roads to assert?

(b) Did the lot owners' failure to lay out or use the streets and roads as shown on the subdivision plat constitute an abandonment of their access rights over such roads?

8. The parties are unable to agree as to the form of this question. Accordingly, this question is set forth in the alternative forms proposed by appellants and by appellee:

*Question 8 as proposed by Appellants*: If the dedication to the public has been revoked, do the lot owners and their successors retain a compensable interest in the right of way?

*Question 8 as proposed by Appellee*: If the dedication to the public has been revoked, do the lot owners and their successors retain an easement in the right of way?

9. If the answer to the preceding question is in the affirmative, does Sterling have a compensable interest in the roads?

plat. Because there was no mention of any reversionary interest in these transactions, the present case falls under the rule stated in *Smith v. Horn,* 70 Fla. 484, 70 So. 435, 436 (1915):

> Where the owner of land has it surveyed, mapped, and platted, showing subdivisions thereof, with spaces for intervening streets or other highways between the subdivisions clearly indicated upon the map or plat, and conveyances in fee of the subdivisions are made with reference to such map or plat, the owner thereby evinces an intention to dedicate an easement in the streets or other highways to the public use as such, the title to the land under the street remaining in the owner or his grantees; and, where such conveyances are made with reference to the map or plat, the dedication of the easement for street purposes cannot be subsequently revoked as against the grantees, and the title of the grantees of subdivisions abutting on such streets, in the absence of a contrary showing, extends to the center of such highway, subject to the public easement. And, where the highway is lawfully surrendered, the then holder of the title to abutting property and to the center of the street has the property relieved of the public easement.

This rule dates from the decision in *Florida Southern Ry. Co. v. Brown,* 23 Fla. 104, 1 So. 512 (1887), and was applied in *Servando Building Co. v. Zimmerman,* 91 So.2d 289 (Fla.1956). In the present case, we hold that the reversionary interest, retained by the subdivider, was subsequently conveyed, together with the lots, subject to the easement in favor of the public. The reversionary interest of Sterling's predecessor in title was distributed among the lot owners, as the lots were sold. It follows that Sterling has no interest of any kind in the parcel; none of its property was taken in the condemnation action, and the road easements in favor of the public are preserved."

In light of the Florida Court's holding, there are no issues left for federal review.[2] The judgment of the District Court was correct.

We cannot refrain, as we have many times done,[3] from once again extolling the great utility of the certification procedure. Unlike the pure diversity case, its use here gives an authoritative Florida answer to a decisive question at the center of a federal question controversy.

AFFIRMED.

---

2. Both parties have represented to this Court that there are no remaining issues for federal review and that summary affirmance, on the basis of the decision is appropriate.

3. *Nardone v. Reynolds,* 5 Cir., 1976, 538 F.2d 1131, 1132, n. 3.

