# Supreme Court of Florida

_____

No. SC14-1465
_____

**STEPHEN J. ROGERS, et al.,**
Appellants,

vs.

**THE UNITED STATES OF AMERICA,**
Appellee.

[November 5, 2015]

CANADY, J.

Under the authority of article V, section 3(b)(6) of the Florida Constitution, the United States Court of Appeals for the Federal Circuit has certified to this Court a question of Florida law which the Court of Appeals found would be determinative of an appeal pending in that court and upon which that court found there to be "no controlling precedent in the existing decisions of the Florida Supreme Court." Rogers v. United States (Rogers III), Nos. 2013-5098 & 2013-5102, slip op. at 4 (Fed. Cir. July 21, 2014). We are authorized to answer the question. See art. V, § 3(b)(6), Fla. Const.

# FACTS

This case originates from claims for compensation for takings of property

filed in the United States Court of Federal Claims. The claimants alleged that the

conversion of a former railroad corridor into a recreational trail had effected a

taking of the abutting landowners' property rights without compensation. The

United States Court of Federal Claims, as explained in two opinions, each

involving multiple claimants, found, insofar as the current appellants are

concerned, that the claimants did not own any property interests in the land

formerly used as a railroad corridor and therefore were not entitled to

compensation. See Rogers v. United States (Rogers II), 107 Fed. Cl. 387 (Fed. Cl.

2012); Rogers v. United States (Rogers I), 93 Fed. Cl. 607 (Fed. Cl. 2010). The

claimants appealed these two decisions, and as stated above, the Court of Appeals

for the Federal Circuit certified a question of Florida law for this Court to answer.

The Court of Appeals set forth the following under the heading "A

Statement of All Facts Relevant to the Questions Certified":

> The property at issue involves, in part, a 12.43 mile long, 100
> foot wide strip of land between Sarasota and Venice in Sarasota
> County, Florida. The Seaboard Air Line Railway ("Seaboard")
> received property interests for the land underlying its railway through
> a series of transactions from 1910 through 1941. In the early 1900s,
> Seaboard surveyed the property it intended to use for its rail way. In a
> series of four deeds (the Blackburn, Phillips, Frazer, and Knight
> deeds), property owners conveyed their interests in the northern
> corridor of the rail way to Seaboard in September 1910. Those deeds
> appear, on their face, to unambiguously convey a fee simple interest

- 2 -

to Seaboard. After receiving these deeds, Seaboard laid track and began to operate trains along the entire corridor as of November 1911. At this time, Seaboard had not received any deed corresponding to the southern portion of the rail corridor, but still operated trains along the entire corridor.

In 1926-27, Seaboard relocated the southern portion of its rail corridor a quarter mile to the east. On April 1, 1927, trains began to run along the relocated rail corridor. Then, on April 4, 1927, Seaboard received a deed from the Brotherhood of Locomotive Engineers pension fund ("BLE") that appears, on its face, to unambiguously convey a fee simple interest in the property corresponding to the relocated southern portion of the rail corridor.[n. 2] Seaboard continued to operate trains along the entirety of the rail corridor.

> [N. 2] Seaboard also received a deed from Venice-Nokomis Holding Corporation on November 10, 1941 that purported to transfer the same property that BLE transferred to Seaboard in the 1927 BLE deed.

In 2003, a successor operator of the rail corridor, Seminole Gulf, sought an exemption from continuing to operate the rail line. The Surface Transportation Board granted Seminole Gulf's petition for an exemption, which allowed Seminole Gulf and Sarasota County the opportunity to negotiate a railbanking and interim trail use agreement. Seminole Gulf and Sarasota County reached an agreement, and CSX Corporation ("CSX"), the owner of the rail corridor, quitclaimed its interest in the property to the Trust for Public Land. CSX then removed its track, and the Trust converted the property into the Legacy Trail.

In addition to these facts, attached hereto are the following documents from the parties' Appendix on Appeal:

> 1. Court of Federal Claims's Partial Final Judgment, entered May 10, 2013 (A1);

> 2. Court of Federal Claims's Opinion and Order, entered June 28, 2010 (A2-22);

3. Court of Federal Claims's Opinion and Order, entered September 25, 2012 (A23-42).

Rogers III, slip op. at 5-7 (one footnote omitted).  The Court of Appeals stated the certified question as follows:

Assuming that a deed, on its face, conveys a strip of land in fee simple from a private party to a railroad corporation in exchange for stated consideration, does Fla. Stat. § 2241 (1892) (recodified at Fla. Stat. § 4354 (1920); Fla. Stat. § 6316 (1927); Fla. Stat. § 360.01 (1941)), state policy, or factual considerations—such as whether the railroad surveys property, or lays track and begins to operate trains prior to the conveyance of a deed—limit the railroad's interest in the property, regardless of the language of the deed? [n. 1]

[N. 1] While the Appellants dispute whether the deeds appear on their face to transfer a fee simple interest in the properties at issue, like the Court of Federal Claims before us, we conclude that they do.

Rogers III, slip op. at 5.

Considering the alternatives included in the Court of Appeals' certified question, we see that there are actually three questions: (1) Does section 2241, Revised Statutes of Florida (1892), limit the railroad's interest in the property, regardless of the language of the deeds?  (2) Does state policy limit the railroad's interest in the property, regardless of the language of the deeds?  (3) Do factual considerations, such as whether the railroad surveys land or lays track and begins running trains before the conveyance of a deed, limit the railroad's interest in the property, regardless of the language of the deeds?  Under the circumstances found

to exist by the Court of Federal Claims, we answer all three questions in the negative.

The Court of Appeals' mention of "a railbanking and interim trail use agreement," Rogers III, slip op. at 6, refers to a step in the process for converting an unused railroad corridor into a recreational trail under federal law. See 16 U.S.C. § 1247(d) (2012).[1] The national program of conversion of unused railroad corridors into recreational trails, which is intended in part to "preserve established railroad rights-of-way for future reactivation of rail service," 16 U.S.C. § 1247(d), is a valid exercise of the authority of Congress to regulate interstate commerce. See Preseault v. I.C.C., 494 U.S. 1, 17-19 (1990).

The present case arises from the claims of a group of owners of land abutting the railroad corridor who claim that conveyances to the railroad by their predecessors in title granted only easements for a railroad right-of-way and did not convey fee simple title; that the abandonment of the railroad right-of-way gave them the right to claim the land free of the easements; and that the conversion of

---

1. National Trails System Act Amendments of 1983, Pub. L. No. 98-11, tit. II, § 208, 97 Stat. 42, 48. There is no need for us to explain the difference between an "exemption from continuing to operate the rail line," Rogers III, slip op. at 6, which the Court of Appeals stated was involved in this case, and an "abandonment" of a railroad corridor under 49 U.S.C. §§ 10502, 10903 (2012). See Whispell Foreign Cars, Inc. v. United States, 100 Fed. Cl. 529, 532-35 (Fed. Cl. 2011).

the land to a public recreational trail constitutes a taking for which they are entitled to compensation. "[A] Fifth Amendment taking occurs when, pursuant to the Trails Act, state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." Caldwell v. United States, 391 F.3d 1226, 1228 (Fed. Cir. 2004); see also Hash v. United States, 403 F.3d 1308 (Fed. Cir. 2005). In the two opinions pending on review in the Court of Appeals, the Court of Federal Claims engaged in a detailed examination and analysis of the process and the legal documents by which Seaboard obtained title to the parcels of land in question in this proceeding.

Seaboard obtained title to the parcels of land in question by five deeds, four executed in 1910 and one in 1927. A sixth deed, recorded in 1941, conveyed the same property as the 1927 deed and appears to have been recorded to remove any doubt about the effect of the 1927 deed. In the later of the Court of Federal Claims' two opinions, the four 1910 deeds are referred to as the Blackburn, Phillips, Frazer, and Knight deeds. See Rogers II, 107 Fed. Cl. at 389, 395-98. The 1927 deed was executed by the B.L.E. Realty Corporation and is referred to as the B.L.E. deed in the earlier Court of Federal Claims opinion. See Rogers I, 93 Fed. Cl. at 615.

Record documents show that the Blackburn deed reads in pertinent part as follows:

- 6 -

That for and in consideration of the sum of Two Hundred Dollars ($200.00) in hand paid, the receipt of which is hereby acknowledged, and other valuable consideration, the parties of the first part hereby grant, bargain, sell, and convey unto the party of the second part all their right, title and interest, of any nature whatsoever, in and to the following property, to-wit:

[100-foot-wide strip of land, 50 feet on either side of a center line described by reference to township, range, and section lines, and described as being about 3.5 acres]

TOGETHER WITH all and singular the tenements, hereditaments, and appurtenances thereunto belonging or appertaining, and every right, title or interest, legal or equitable, of the said party of the first part in and to the same.

The other three 1910 deeds used the same operative language, i.e., "grant, bargain, sell and convey" for specified consideration all "right, title and interest of any nature whatsoever" together with all "appurtenances thereunto belonging" and, again, "every right, title or interest, legal or equitable."

The B.L.E. deed from 1927 reads in pertinent part:

That said B.L.E. Realty Corporation, for and in consideration of the sum of Five Dollars, cash in hand paid, and for other good and valuable considerations, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, aliened, remised and released and doth by these presents grant, bargain, sell, convey, alien, remise and release, unto the said Seaboard Air Line Railway Company, its successors and assigns, forever, all of its right, title and interest in and to the following real estate situated in Sarasota County, Florida, described as follows, to wit:

[legal descriptions of three tracts of land]

TO HAVE AND TO HOLD, together with the rights, members and appurtenances thereunto belonging or appertaining, unto the said

party of the second part, its successors and assigns in fee simple, forever.

None of the deeds described the interest in land being conveyed as a "right of way." The Court of Federal Claims found that the deeds conveyed title to the parcels of land in question in fee simple. Based on the finding that the claimants' predecessors in title did not retain any ownership interests, the court held that the current owners of land abutting the corridor do not have any ownership interests and therefore have not suffered any compensable taking of property.

## ANALYSIS

### I. The Statute

At the time of the 1910 deeds, the statute cited by the Court of Appeals was codified as section 2803, General Statutes of Florida (1906). At the time of the 1927 deed, the same statute appeared as section 4354 in the Revised General Statutes of Florida (1920).[2] In substance, this statute remained the same from the time of its adoption in 1874 until it was repealed in 1982 and will be referred to herein as Special Powers of Railroad Statute. At all times relevant to the issues in this proceeding, the statute provided:

---

2. As noted by the Court of Appeals in its framing of the question, the statute also appeared as section 2241, Revised Statutes of Florida (1892), section 6316, Compiled General Laws of Florida (1927), and section 360.01, Florida Statutes (1941). Section 360.01 was repealed in 1982. See ch. 81-318, § 2, Laws of Fla.

Every railroad and canal company shall be empowered:

(1) To cause such examinations and surveys for the proposed railroad or canal to be made as shall be necessary for the selection of the most advantageous route, and for such purposes by its officers, agents and servants to enter upon the lands or water of any person for that purpose.

(2) To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its road or canal, but the real estate received by voluntary grant shall be held and used for purposes of such grant only.

(3) To purchase, hold and use all such real estate and other property as may be necessary for the construction and maintenance of its road or canal and the stations and other accommodations necessary to accomplish the objects of its incorporation, and to sell, lease or buy any lands or real estate not necessary for its use.

(4) To lay out its road or canal, not exceeding two hundred feet in width, and to construct the same, and, for the purpose of cuttings and embankments and for obtaining gravel and other material, to take as much land as may be necessary for the proper construction, operation and security of the road or canal, or to cut down any trees that may be in danger of falling on the road or into the canal, making compensation therefor as provided for land taken for the use of the company.

(5) To construct its road or canal across, along or upon or use any stream of water, water-course, street, highway or canal which the route of its road or canal shall intersect or touch, and whenever the track of any railroad or canal shall touch, intersect or cross any road, highway or street, it may be carried over or under such railroad or canal, as may be found most expedient for the public good; and in case any embankment or cut in the construction of any railroad or canal shall make it necessary to change the course of any highway or street, the company may construct such road or canal so as to change the course or direction of any road, highway or street.

(6) To cross, intersect or unite its railroad with any other railroad heretofore or hereafter to be constructed at any point in its route or upon the ground of any other railroad company with the necessary turnouts, sidings and switches and other conveniences in furtherance of the objects of its connections; and every company whose railroad is or shall be hereafter intersected by any new railroad

can unite with the owners of such new railroads forming such intersections and connections and grant the facilities aforesaid, and if the two corporations cannot agree upon the amount of compensation to be made therefor and all the points and matters of such crossing and connections, the same shall be ascertained according to the provisions for exercising the right of eminent domain, and no company which shall have obtained the right of way and constructed its road at the point of intersection before the beginning of proceedings for condemnation shall be required to alter the grade or change the location of its road.

(7)  To take and convey persons or property over their railroad or canal by the power or force of steam or animals or by any mechanical power, and to receive compensation therefor, and to do all the business incident to railroads or canal business.

(8)  To erect and maintain all convenient buildings, wharves, docks, stations, fixtures and machinery for the accommodation and use of their passengers and freight business.

(9)  To regulate the time and manner in which passengers and property shall be transported.

(10)  To borrow such sums of money at such rates of interest and upon such terms as the company or its board of directors shall authorize or agree upon and may deem necessary or expedient, and to execute one or more trust deeds or mortgages, or both, as the occasion may require, of railroads or canals constructed or in process of construction by said company, for the amounts borrowed or owing by such company, as its board of directors shall deem expedient; and such company may make such provisions in such trust deed or mortgage for transferring their railroad track or canal right of way, depots, grounds, rights, privileges, franchises, immunities, machines, houses, rolling stock, furniture, tools, implements, appendages and appurtenances used in connection with such railroads or canals, in any manner whatsoever then belonging to the said company, or which shall thereafter belong to it, as security for any bonds, debts or sums of money as may be secured by such trust deed or mortgage, as they shall think proper; and in case of sale of any railroad or canal, or any part thereof, constructed or in course of construction by any railroad or canal company, by virtue of any trust deed or of any foreclosure of any mortgage thereon, the parties acquiring title under such, and their associates, successors or assigns, shall have or acquire thereby, and shall exercise and enjoy thereafter the same rights, privileges, grants,

franchises, immunities and advantages in or by said trust deed or mortgage enumerated and conveyed, which belonged to and were enjoyed by the company making such deed or mortgage or contracting such debt, so far as the same relate or appertain to that portion of said road or canal or the line thereof mentioned or described and conveyed by said mortgage or trust deed, and no further, as fully and absolutely in all respects as the corporators, officeholders, shareholders and agents of such company might or could have done, had not such sale or purchase taken place, and such purchasers, their associates, successors or assigns may become incorporated as provided by law.

Appellants argue that subsection (2) of the statute applies, and since the statute provides that "real estate received by voluntary grant shall be held and used for the purposes of such grant only," the interests conveyed to the railroad were only easements for use of the property as a railroad right of way. However, nothing in any of the deeds indicates that any of them were voluntary grants or that they were intended to convey easements.

A "voluntary conveyance" is "[a] conveyance made without valuable consideration." Black's Law Dictionary 408 (10th ed. 2014). Construing a similar state statute on the subject of railroad rights of way, the Supreme Court of Missouri has held that the term "voluntary grant" was used by the legislature to mean a conveyance without valuable consideration. See, e.g., Clay v. Mo. State Highway Comm'n, 239 S.W.2d 505, 508 (Mo. 1951); Brown v. Weare, 152 S.W.2d 649, 653 (Mo. 1941). The provision in subsection (2) of the Florida statute, to the effect that "real estate received by voluntary grant shall be held and used for purposes of

- 11 -

such grant only," does not apply in this case because the deeds were grants by bargain and sale for valuable consideration and conveyed fee simple title.[3]

Appellants also argue that the intent to grant only easements is indicated by language in the deeds showing that the purpose for which the land was purchased was for a railroad right of way. They cite cases from other jurisdictions holding that deeds granting property to railroads for rights of way are construed to convey easements rather than fee simple title.[4] However, no decisions of Florida courts support Appellants' argument.

---

3. "Voluntary grants" of land to railroads might include land grants made by a state or local government or the federal government. Other grantors might donate land to railroads in the hope of benefiting from the location of the railroad tracks or a station. See Seaboard Air Line Ry. Co. v. Bd. of Bond Trustees of Special Road & Bridge Dist., 108 So. 689, 698 (Fla. 1926); Armstrong v. Seaboard Air Line Ry. Co., 95 So. 506, 506-07 (Fla. 1922).

4. See Neider v. Shaw, 65 P.3d 525 (Idaho 2003) (use of term "right of way" in conveyance indicates an easement); Ross, Inc. v. Legler, 199 N.E.2d 346 (Ind. 1964) (public policy construes conveyances to railroads for rights of way as easements); Harvest Queen Mill & Elev. Co. v. Sanders, 370 P.2d 419 (Kan. 1962) (railroads do not get fee simple title to rights of way); Ill. Cent. R.R. Co. v. Roberts, 928 S.W.2d 822 (Ky. 1996) (term "right of way" in deed to railroad conveys an easement); Mich. Dep't of Nat. Res. v. Carmody-Lahti Real Estate, Inc., 699 N.W.2d 272 (Mich. 2005) (deed granting right of way conveys an easement); Brown v. Weare, 152 S.W.2d 649 (Mo. 1941) (public policy of state is that when railroad acquires right of way it takes an easement); Pollnow v. State Dep't of Nat. Res., 276 N.W.2d 738 (Wis. 1979) (railroad right of way taken by condemnation is an easement).

The effect of a deed, both as to the property conveyed and the character of the estate conveyed, is determined by the intent of the grantor. See Reid v. Barry, 112 So. 846, 852 (Fla. 1927). In Saltzman v. Ahern, 306 So. 2d 537, 539 (Fla. 1st DCA 1975), Florida's First District Court of Appeal restated the following well-established rule:

> When the language of a deed is clear and certain in meaning and the grantor's intention is reflected by the language employed, there is no room for judicial construction of the language nor interpretation of the words used. Rules of construction will be utilized only where the meaning or effect of the deed is doubtful. If there is no ambiguity in the language employed then the intention of the grantor must be ascertained from that language.

We need not discuss the language of the deeds in this case in detail or the circumstances of their execution because the Court of Federal Claims did a thorough job of it in reaching the conclusion that the deeds by their language appeared to convey fee simple title. The deeds in question in this case included all the formal statements needed to show that the land was purchased and that the deeds granted fee simple title.[5]

---

5. Section 689.10, Florida Statutes (2014), provides:

> Where any real estate has heretofore been conveyed or granted or shall hereafter be conveyed or granted without there being used in the said deed or conveyance or grant any words of limitation, such as heirs or successors, or similar words, such conveyance or grant, whether heretofore made or hereafter made, shall be construed to vest the fee simple title or other whole estate or interest which the grantor had power to dispose of at that time in the real estate conveyed or

- 13 -

Contrary to Appellants' argument, Florida law recognizes that railroads may hold fee simple title to land acquired for the purpose of building railroad tracks. See, e.g., Atlantic Coast Line R.R. Co. v. Duval Cnty., 154 So. 331 (Fla. 1934); Clark v. Cox, 85 So. 173 (Fla. 1920); Fla. Power Corp. v. McNeely, 125 So. 2d 311 (Fla. 2d DCA 1960). Subsection (3) of the statute authorized railroad companies to "purchase . . . such real estate . . . as may be necessary to the construction and maintenance of its road." The fact that railroads in Florida have also conducted their operations using rights of way which they held by virtue of easements, see Van Ness v. Royal Phosphate Co., 53 So. 381 (Fla. 1910); Silver Springs, Ocala & Gulf R.R. v. Van Ness, 34 So. 884 (Fla. 1903), does not change this fact. The determinative factor is the language of the deed when the language

granted, unless a contrary intention shall appear in the deed, conveyance or grant.

This law was enacted in 1903, ch. 5145, § 1, Laws of Fla. (1903), and made retroactive in 1925. Ch. 10170, § 1, Laws of Fla. (1925). One purpose of the law was to make it unnecessary to include certain language required under the common law to convey an "estate of inheritance." See Reid v. Barry, 112 So. 846, 860-61 (Fla. 1927). In Reid, the Court observed that the "habendum clause" of a deed defines the estate to be conveyed. "But if the estate conveyed is shown by the granting clause, the habendum is not necessary and its omission of no effect." Id. at 861. The effect of this statute is that a deed is presumed to convey fee simple title, or whatever title the grantor had power to convey, unless a contrary intention is shown by the language of the deed.

is clear.  See, e.g., Cohen v. Pan Am. Aluminum Corp., 363 So. 2d 59 (Fla. 3d

DCA 1978).

On the first component of the certified question, we answer that nothing in

section 2241, Revised Statutes of Florida (1892), as the statute existed then or

later, limited the railroad's interest in the property regardless of the language of the

deed.

## II.  State Policy

Appellants argue that the railroads that operated trains using the corridor in

question in this case occupied and used the corridor under rights of way that were

easements, that is, rights to use the strips of land for railroad purposes only.

According to this argument, when the corridor stopped being used for railroad

purposes and was in effect abandoned, unencumbered title to the land reverted to

the abutting landowners as successors in title to the owners who granted the

railroad the right to run trains over their property.[6]  Subsection (4) of the statute

---

6.  Some courts have cautioned against using the term "reversion" to refer to
the interest of an owner of land subject to an easement whose servient estate is
later unburdened by reason of the abandonment or discontinuation of the easement.

[A] "reversion" is a future interest remaining in the transferor
following the conveyance of certain lesser estates to a transferee,
typically when the transferee takes a possessory estate of freehold, for
example a life estate.  An easement is not such a possessory estate of
freehold. . . . Therefore labeling the retained interest a "reversion" is
not consistent with the traditional classification scheme, which views

- 15 -

quoted above provides that a railroad company may "take as much land as may be necessary for the proper construction, operation, and security of the road . . . making compensation therefor." Appellants argue that, even if the deeds by which the landowners granted land to the railroad appeared to convey fee simple title, the various parcels of land making up the corridor used by the railroad should nevertheless be treated as though they were taken by eminent domain.

Appellants cite cases from other jurisdictions holding that when a railroad obtains property by eminent domain for use as a railroad right of way, it receives only such interest as is needed to fulfill the purpose of the taking, which is an easement. We need not address the nature, quality, or character of the title or estate in land a railroad obtains when it takes land for a right of way by eminent domain under Florida law, because the deeds in question in this case conveyed fee simple title and were obtained by bargain and sale, not eminent domain.

Appellants argue that the deeds show that the railroad paid only nominal consideration for the land and that the recitation of nominal consideration in a deed

_____

the retained interest as a present estate in fee simple, subject to the burden of the easement.

Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996); see also Brown, 152 S.W.2d at 655 (Mo. 1941) ("[I]n the grant of an easement no title passes but . . . continues in the holder of the servient estate so that when the easement ceases there can be no such thing as a reversion of title. . . . [T]he servient estate is merely freed from the burden of the use . . . .").

can be evidence that the grantor intended to grant something less than full title. Appellants suggest that the amounts of consideration stated in the deeds show that the deeds were meant to convey easements rather than fee simple title. Appellants cite Craft v. Craft, 76 So. 772 (Fla. 1917), to support this argument. In Craft, certain lots were conveyed without any consideration under circumstances where the grantee had agreed to sell the lots and remit the proceeds to the grantors. The Court held that while the grantee received legal title, his undertaking created a trust enforceable in a court of equity. Id. at 772-73. The agreement of the parties resulted in the grantee holding the proceeds of the sales in trust for the grantors. The case is inapplicable here because the facts are distinguishable. Appellants also cite Ogg v. Mediacom LLC, 142 S.W.3d 801 (Mo. Ct. App. 2004), where a Missouri court found nominal consideration to be a factor in discerning the grantor's intent to convey an easement rather than fee simple title. The law of Florida, however, is that the amount of consideration stated in a deed provides no basis for questioning the validity of the deed. See, e.g., Kingsland v. Godbold, 456 So. 2d 501 (Fla. 5th DCA 1984); Venice East, Inc. v. Manno, 186 So. 2d 71 (Fla. 2d DCA 1966). The language of the deed determines the nature of the estate conveyed. Here the deeds were clear in their language and conveyed fee simple title.

Appellants argue that the deeds should be construed as having granted easements because the law of Florida disfavors recognition of fee simple title to "strips and gores" of land which become isolated due to changes in their use or other circumstances. As applied to railroad rights of way, Appellants argue, this principle of law would operate so that upon abandonment of a railroad corridor, title would "revert" to the adjoining landowners. To support this argument, Appellants cite cases dealing with street and road easements created by subdivision plats, such as Paine v. Consumers' Forwarding & Storage Co., 71 F. 626 (6th Cir. 1895), in which the court explained the principle as follows:

> The existence of "strips or gores" of land along the margin of nonnavigable lakes, to which the title may be held in abeyance for indefinite periods of time, is as great an evil as are "strips and gores" of land along highways or running streams. The litigation that may arise therefrom after long years, or the happening of some unexpected event, is equally probable, and alike vexatious in each of the cases, and that public policy which would seek to prevent this by a construction that would carry the title to the center of a highway, running stream, or nonnavigable lake that may be made a boundary of the lands conveyed applies indifferently, and with equal force, to all of them.

Id. at 629-30 (quoting Lembeck v. Nye, 24 N.E. 686, 689 (Ohio 1890)). Paine involved a subdivision plat by which strips of land had been designated for use as streets. Later one of the streets was abandoned, and the court held that the deeds to the lots adjacent to the land designated for a street had conveyed title that extended to the center line of the street. It was clear that the court was applying a

presumption as to the grantor's intent, which would not have been appropriate or necessary had a different intention been made clear in the deeds.  Id. at 629, 632, 634-35.  As applied to a railroad right of way, the "strips and gores" doctrine has been explained as follows:

> The presumption is that a deed to a railroad or other right of way company (pipeline company, telephone company, etc.) conveys a right of way, that is, an easement, terminable when the acquirer's use terminates, rather than a fee simple.  Transaction costs are minimized by undivided ownership of a parcel of land, and such ownership is facilitated by the automatic reuniting of divided land once the reason for the division has ceased.  If the railroad holds title in fee simple to a multitude of skinny strips of land now usable only by the owner of the surrounding or adjacent land, then before the strips can be put to their best use there must be expensive and time-consuming negotiation between the railroad and its neighbor—that or the gradual extinction of the railroad's interest through the operation of adverse possession.  It is cleaner if the railroad's interest simply terminates upon the abandonment of railroad service.  A further consideration is that railroads and other right of way companies have eminent domain powers, and they should not be encouraged to use those powers to take more than they need of another person's property—more, that is, than a right of way.  But all this said, there is nothing to prohibit a farmer or other landowner from selling outright to the railroad a strip of land for the railroad's tracks; and if that is how the matter was handled with respect to some or all of the parcels in this case, Penn Central remains their owner today, save as its rights may have been extinguished by adverse possession.

Penn Central Corp. v. U.S. R.R. Vest Corp., 955 F.2d 1158, 1160 (7th Cir. 1992) (citations omitted).  This explanation supports our conclusion that since the deeds in question here were clear as to the title conveyed, presumptions that are used when the intent is unclear do not apply.

Appellants also cite certain decisions of this Court in support of their "strips and gores" argument. In <u>Seaboard Air Line Ry. v. Southern Investment Co.</u>, 44 So. 351 (Fla. 1907), and <u>Florida Southern Ry. v. Brown</u>, 1 So. 512 (Fla. 1887), this Court recognized that when a street or highway is the boundary of a lot or piece of land, the owner of the lot owns to the center of the street or highway, subject to the right of the public to use the public street or highway. "The rule seems to be based on the supposed intention of the parties, and the improbability of the grantor desiring or intending to reserve his interest in the street when he had parted with his title to the adjoining land." <u>Id.</u> at 513-14. In <u>Smith v. Horn</u>, 70 So. 435 (Fla. 1915), a subdivision plat was mapped out showing blocks and lots with spaces for streets running in between them. The plat showed the owner's intent to create public easements for the streets. The purchasers of the lots were presumed to have received title to the land extending to the center of the street abutting their lots. Upon the subsequent abandonment or surrender of a street easement, the abutting owners owned the property to the center of the street free of the easement. <u>Id.</u> at 436-37. This outcome was based on the presumed intent of the grantor in the absence of a contrary showing. <u>Servando Bldg. Co. v. Zimmerman</u>, 91 So. 2d 289 (Fla. 1956), recognized that the rule applied in <u>Horn</u>, <u>Southern Investment</u>, and <u>Brown</u> is a rule of construction that is employed to aid in determining the grantor's intent. Under this body of caselaw, a conveyance of a lot bordered by a street is

presumed to carry title to the center of the street. This rule of construction does not apply if a contrary intention is made clear by the language of the deed. To the same effect is the decision in United States v. 16.33 Acres of Land, 342 So. 2d 476 (Fla. 1977). The presumption is also inapplicable if the strip of land being claimed is titled in someone else. See Paine, 71 F. at 629.

These cases on subdivision plats are distinguishable. Moreover, the presumption that an owner of a lot abutting a street owns to the center of the street will not prevail over clear language in a deed showing contrary intent.[7] The Appellants claim to be the successors in title of landowners whose land was subject to an easement for a railroad right of way. But the Appellants in the present case cannot be equated to purchasers who took title to land subject to an easement for a street or road for the benefit of the public whose land was later unburdened due to the discontinuation or abandonment of the street or road easement. The Appellants' predecessors were the grantors, and if they intended to grant only easements their deeds would have said so. The record shows that the claimants' predecessors in title did not grant mere easements to the railroad while retaining title to the land underlying the easements. It shows instead that the owners sold

_____

7. We need not discuss whether or to what extent this "center line presumption" rule still applies to property adjacent to streets and highways in Florida today. We hold that it has no application in this case.

their land to the railroad and conveyed to it fee simple title.  We therefore find that the decisions Appellants cite in support of their "strips and gores" argument are inapplicable to this case.

We answer the second part of the question by holding that no policy of the State of Florida limits the railroad's interest in the property regardless of the language of the deed.

### III.  Other Factual Considerations

The third part of the certified question asks whether "factual considerations—such as whether a railroad surveys property, or lays track and begins to operate trains prior to the conveyance of a deed, limit the railroad's interest in the property."  Rogers III, slip op. at 5.

Subsection (1) of the railroad and canal statute quoted above provided as follows:

> Every railroad and canal company shall be empowered:
> (1)  To cause such examinations and surveys for the proposed railroad or canal to be made as shall be necessary for the selection of the most advantageous route, and for such purposes by its officers, agents and servants to enter upon the lands or water of any person for that purpose.

Thus the railroad company was authorized to enter upon private land for the purpose of conducting surveys to determine the best route for the railroad.

Appellants seek support in <u>Preseault v. United States</u>, 100 F.3d 1525 (Fed. Cir. 1996), for the argument that surveying the land and locating the corridor for the railroad gave the process of purchasing the rights of way an "eminent domain flavor." <u>Id.</u> at 1537. The suggestion, based on <u>Preseault</u>, is that the element of potential coercion from the possibility of condemnation should lead a court to conclude that the railroad's resulting interest in the property is only an easement, assuming an easement is the most the railroad could have obtained by condemnation. <u>Preseault</u> was grounded on the Court of Appeals' conclusions about state law. <u>Id.</u> at 1534. However, where state law does not "treat, as conveying an easement, rather than a fee, a deed that conveyed all right, title and interest of the grantor," the outcome will be different. <u>Burgess v. United States</u>, 109 Fed. Cl. 223, 233 (Fed. Cl. 2013) (citing <u>Lowers v. United States</u>, 663 N.W.2d 408, 410 (Iowa 2003), for its refusal to "[d]etermin[e] the nature of the interest conveyed by reference to the intended use by the grantee.").

In <u>Holland v. State</u>, 388 So. 2d 1080 (Fla. 1st DCA 1980), a grantor sold land to the State for a negotiated price for a highway right of way, conveying fee simple title by warranty deed in statutory form. The court held that the grantor could not later claim that the State did not obtain subsurface rights on the ground that there would have been no necessity for the State to obtain the subsurface rights in a taking by eminent domain. "The time for appellants to have declined

- 23 -

voluntary relinquishment of subsurface mineral rights was when the fee simple sale was bargained and consummated, averting condemnation proceedings in which appellants might have challenged the public necessity for the taking." Id. at 1082. Similarly, the fact that a railroad endowed by the State with the power of eminent domain might not have been able to show a necessity of taking more than an easement does not provide a basis for questioning the effect of an unambiguous deed that was sufficient on its face to convey fee simple title. We therefore conclude that the fact that the railroad company surveyed property that it did not own and located a route for its railroad before acquiring title to it did not affect the nature or quality of the property interest the railroad received under the deeds that were executed later.

The record shows that the four deeds that conveyed property used for the northern part of the route were executed before the tracks were laid. Thus the question about running trains before the conveyance is not involved. The southern part of the route was relocated in the mid-1920s. Trains were running on the southern part of the route at the time of the 1927 deed from B.L.E. Realty. The opinion of the Court of Federal Claims explains the complicated history of the parcels of land conveyed to Seaboard by the 1927 B.L.E. Realty deed. See Rogers I, 93 Fed. Cl. at 612-16. There is no need for us to explain the events that led to the railroad operating on those tracks before it had secured title to the right

of way. Appellants have not cited any source of statutory or decisional law applicable in Florida that supports their argument that a deed meeting all the formal requisites for passing fee simple title is rendered invalid or is limited in its effect by the fact that the grantee is already occupying the property. When a deed is unambiguous and sufficient on its face to show the grantor's intent as to the property described and the estate conveyed, extrinsic evidence is not admissible to vary the terms. See, e.g., Fla. Moss Prods. Co. v. City of Leesburg, 112 So. 572 (Fla. 1927); Mason v. Roser, 588 So. 2d 622 (Fla. 1st DCA 1991).

We answer the third part of the certified question by holding that the factual considerations referred to in the certified question do not limit the railroad's interest in the property regardless of the language of the deeds.

## CONCLUSION

The certified question is answered in the negative as explained above. We submit our answer and remand the case to the United States Court of Appeals for the Federal Circuit.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Certified Question of Law from the United States Court of Appeals for the Federal Circuit - Case Nos. 2013-5098 & 2013-5102

Mark F. (Thor) Hearne, II of Arent Fox, LLP, Clayton, Missouri; Andrew Prince Brigham of Brigham Property Rights Law Firm, Jacksonville, Florida; Raoul G. Cantero, III and David P. Draigh of White & Case LLP, Miami, Florida; and James W. Ely, Jr., Professor Emeritus, Vanderbilt University, Nashville, Tennessee,

      for Appellants

John C. Cruden, Assistant Attorney General, and Lane N. McFadden, Appellate Attorney, United States Department of Justice, Washington, District of Columbia; and Michael T. Gray, Appellate Attorney, United States Department of Justice, Jacksonville, Florida,

      for Appellee

Major Best Harding, James Harold Thompson, and Robert Neil Clarke, Jr. of Ausley & McMullen, P.A., Tallahassee, Florida; and Kim Rice Bongiovanni, Assistant General Counsel, CSX Transportation, Inc., Jacksonville, Florida,

      for Amicus Curiae CSX Transportation, Inc.

Robert W. Goldman of Goldman Felcoski & Stone, P.A., Naples, Florida,

      for Amicus Curiae The Real Property, Probate & Trust Law Section of The Florida Bar

Matthew Zane Leopold, General Counsel, Craig Deron Varn, General Counsel, Ronald Elliot D. Potter, Senior Assistant General Counsel, and Sarah Meyer Doar, Senior Assistant General Counsel, Florida Department of Environmental Protection, Tallahassee, Florida,

      for Amicus Curiae Board of Trustees of the Internal Improvement Trust Fund

Kenneth Bradley Bell, Amy Brigham Boulris, and Lauren Vickroy Purdy of Gunster Yoakley & Stewart, P.A., Tallahassee, Florida,

for Amici Curiae Alabama & Gulf Coast Railway, LLC, The Apalachicola Northern Railway, LLC, The Bay Line Railroad, LLC, The First Coast Railroad, Inc., The Florida Central Railroad Company, Inc., Florida East Coast Railway, LLC, The Florida Midland Railroad Company, Inc., The Florida Northern Railroad Company, Inc., Georgia Southern and Florida Railway Company, Seminole Gulf Railway, LP, and The Talleyrand Terminal Railroad Company, Inc.

Alexandra Jennifer Overhoff, Tallahassee, Florida,

for Amicus Curiae Florida Land Title Association

Marc Allen Peoples, Assistant General Counsel, Florida Department of Transportation, Tallahassee, Florida,

for Amicus Curiae Florida Department of Transportation

Pamela Jo Bondi, Attorney General, Allen C. Winsor, Solicitor General, and Rachel Erin Nordby, Deputy Solicitor General, Tallahassee, Florida,

for Amicus Curiae State of Florida