# United States Court of Appeals for the Federal Circuit

---

STEPHEN J. ROGERS, LINDA L. ROGERS,
DONALD E. DURAN, JUDITH DURAN, DENISE
RIZZO, DEBORAH CHILDERS, NATHAN
CHILDERS, CHESHIRE HUNT, MCCANN
HOLDINGS, LTD., MISSION VALLEY GOLF AND
COUNTRY CLUB, INC., PALMER RANCH
HOLDINGS, INC., WYNNSTAY HUNT, INC.,
BEE RIDGE, LLC, CALUSA LAKES COMMUNITY
ASSOCIATION, INC., FLORIDA BROADACRE
TRAILER LODGE, INC., FLORIDA ROCK
CONCRETE, INC., PINE RANCH EAST OWNERS
ASSOCIATION, INC., POST OFFICE PROPERTIES,
PUTLE HOME CORPORATION, SARASOTA
INVESTMENT COMPANY, INC., STONEYBROOK
GOLF & COUNTRY CLUB OF SARASOTA, INC.,
TOURNAMENT PLAYERS CLUB AT PRESTANCIA,
INC., TRINITY CHAPEL OF SARASOTA, INC.,
LOUIS L. ALDERMAN, ALEXANDRINE BOSWELL,
ANN CONVERSE, SUSAN BELTRAN, CATHY C.
SIANO, SANY CHESTNUT,  MARK T. ENTWISTLE,
ROSEANN M. ENTWISTLE, CHRISTOPHER H.
HERZONG, TRACY A. HERZOG, J. WATT,
VIRGINIA GRAY SHROYER, ALSIE T. MARTIN, AND
MARY K. MARTIN,
*Plaintiffs*

AND

COUNTRY CLUB ESTATES COOPERATIVE, INC.,
WILLIAM J. GILL, SARA S. GILL, HANSON PIPE &
PRODUCTS SOUTHEAST, INC., HATCHETT
CREEK CORPORATION, CAROLE A. MADDEN,

DAVID J. MARTINI, ROSE MARIE MARTINI, ALAN H. MORTIMER, LEE MORTIMER, VENICE LAND COMPANY, AUDREY ROSE ALLEN-WORDELL, JUDITH BADAMS, BATES SHOW SALES STAFF, INC., JEAN E. BECHTEL, RICHARD L. BUONPANE, DONALD CHAPMAN, DARBY SOUTH BUICK-PONTIAC-GMC, INC., ESTATE LANDS EXCAVATORS, INC., TRIMBLE B. GAILBREATH, DIANA J. GAILBREATH, TERRY L. GARNER, KATHY GARNER, LANNING TIRE SALES, INC., CARL E. LONGWELL, MARY ELLEN LONGWELL, DONALD GREY LOWRY, SAMUEL LUBUS, AS TRUSTEE OF THE SAMUEL LUBUS REVOCABLE TRUST AGREEMENT, GLENN LEE MCMURPHY, SANDRA KAY MCMURPHY, JACK MIDKIFF, AVONA MIDKIFF, MILFORD ENTERPRISES, INC., MARGARET L. MORAN, MARY JO PATTISON, AS TRUSTEE OF THE MARY JO PATTISON REVOCABLE TRUST, MARK RICHMOND, TRUSTEE OF THE MARK RICHMOND REVOCABLE TRUST, WILLIAM R. SAUTTER, III, THOMAS H. LEWIS, JR., RICHARD SERINO, JOYCE SERINO, SPERRY MARKETING GROUP, INC., JAMES R. STEWART, SHIRLEY A. STEWART, ROBIN E. STUART, TRUSTEE OF THE REVOCABLE TRUST, VICTOR D. VIRZI, LEONA VIRZI, WALGREEN CO., RICHARD M. WILLIAMSON, PATRICIA WILLIAMSON, DELL WILLMAN, CAROL J. WILLMAN, SUBURBAN PROPANE, L.P., BAY PLAZA PROPERTIES, LLC, CRAMER MOTORS, INC., PUBLIC STORAGE, SOUTHERN SPRING & STAMPING, INC., TRIPLE DIAMOND COMMERCIAL PROPERTIES LLC, VENICE PLAZA LTD., WEST COAST INLAND NAVIGATION DISTRICT, DEE A. DEATERLY, KELLY A. GLAUSMAN, WILLIAM BREDA AND ANGELYN P. BREDA, (ALSO KNOWN AS CFG PROPERTIES), THOMAS MAYHALL AND

**KATHY MAYHALL, (ALSO KNOWN AS NEKARO, LLC), DOUGLASR. MURPHY, JR., SALLY M. BERRYMAN, SUSAN M. WEST, BIRD BAY EXECUTIVE GOLF CLUB, FAYE HOWARD, ROBERT WILLIAMS, KIMAL LUMBER, SEAN PATRICK HILL, ALFRED ART, BARBARA ART, JAMES BATTAGLIA, KATHRYN BATTAGLIA, J. SCOTT BOYKIN, NADENE BOYLE, DALE BROWN, SCOTT BROWN, MARTIN CROCE, MELINDA CROCE, MARGARET DEWEY, DEBORAH FOCHT, TIMOTHY GEORGE, CHARLES GRIMM, MELINDA GRIMM, ROBERT HARRIS, BILLIE HARRIS, RAYMOND LANE, BETH LANE, DONALD LANE, II, KEVIN LYMAN, LLOYD MEADOR, SANDRA SANZONE, DOROTHY THOMAS, JENNY TROYER-CURTIS, EDWIN VAN PELT, SR., JOYCE VAN PELT, ROSS WALKUP, SUSAN WALKUP, CINDY WATSON, ABSOLUTE MANAGEMENT ENTERPRISES, INC., P&S PROPERTIES, INC., PRECISION FABRICATION CORP., AND SIGNTIST, INC.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

————————————

2013-5098, 2013-5102

————————————

Appeals from the United States Court of Federal Claims in Nos. 07-CV-0273, 07-CV-0426, 08-CV-0198, 10-CV-0187, 10-CV-0200, Judge Mary Ellen Coster Williams.

————————————

Decided: December 28, 2015

————————

MARK F. HEARNE, II, Arent Fox, LLP, Clayton, MO, argued for plaintiffs-appellants. Also represented by LINDSAY S.C. BRINTON, STEPHEN SHARP DAVIS, MEGHAN SUE LARGENT.

LANE N. MCFADDEN, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by ROBERT G. DREHER.

————————

Before MOORE, O'MALLEY, and WALLACH, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

This is a consolidated appeal arising from claims by Appellants—abutting landowners—that the United States effected a taking of their property without just compensation when it converted a former railroad corridor into a recreational trail pursuant to the National Trails System Act Amendments of 1983 ("Trails Act").[1] Appellants allege that deeds transferred by their predecessors-in-title to a railroad company granted only easements on their land for railroad purposes and, upon termination of the use of the land as a railroad, left the landowners unencumbered title and possession of their land. The Court of Federal Claims consolidated the landowners' claims into three cases, of which two are on appeal. *Rogers v. United States* (*Bird Bay*), 93 Fed. Cl. 607 (Fed. Cl. 2010), and *Rogers v. United States* (*Rogers III*), 107 Fed. Cl. 387 (Fed. Cl. 2012). The court granted

————————

[1]    The Rails-to-Trails Act was enacted on March 28, 1983, as part of the National Trails System Act Amendments of 1983. Pub. L. No. 98-11, Title II, 97 Stat. 42, 48 (codified at 16 U.S.C. § 1247(d) (2014)).

the government's motion for partial summary judgment in both cases, holding that Appellants lacked a property right or interest in the land-at-issue because Seaboard Air Line Railway ("Seaboard"), the railroad company, had obtained fee simple title to the land from Appellants' predecessors-in-title. Because we agree with the Court of Federal Claims and find the Florida Supreme Court's answer to our certified question to be determinative of the remaining issues, we affirm.

## BACKGROUND

The Surface Transportation Board ("STB") has exclusive and plenary authority over the construction, operation, and abandonment of most of the nation's rail lines. *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004). As we have previously explained in other rails-to-trails cases, a taking, if any, occurs when, pursuant to the Trails Act, the STB issues a Notice of Interim Trail Use ("NITU") to suspend the abandonment of the rail line by a railroad and preserve it for future active railroad use. *Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006). *See* 49 C.F.R. § 1152.29(d). The NITU preserves the STB's jurisdiction over the corridor, thereby preempting the application of state law that might otherwise apply. *Caldwell*, 391 F.3d at 1229-30. The government must provide just compensation under the Fifth Amendment Takings Clause if the issuance of a NITU results in the taking of private property. *Whispell Foreign Cars, Inc. v. United States*, 97 Fed. Cl. 324, 330 (Fed. Cl. 2011) (citing *Preseault v. ICC* (*Preseault I*), 494 U.S. 1, 12-16 (1990)). Thus, a private party's valid interest in the property-at-issue is a prerequisite to a taking. *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001).

The facts relevant to this long overdue decision are set forth in full in the two trial court opinions on appeal, as well as in the certification order we sent to the Florida Supreme Court, as will be explained *infra*. We refer the

reader to those opinions for the full details of the case leading to this opinion and only include here a brief summary of the facts.

Seaboard acquired the right to operate a 12.43 mile long railroad line between the cities of Sarasota and Venice, Florida, through a series of conveyances with multiple landowners from 1910 through 1941. *Rogers III*, 107 Fed. Cl. at 390. Specifically:

> In a series of four deeds (the Blackburn, Phillips, Frazer, and Knight deeds), property owners conveyed their interests in the northern corridor of the rail way to Seaboard in September 1910. Those deeds appear, on their face, to unambiguously convey a fee simple interest to Seaboard. After receiving these deeds, Seaboard laid track and began to operate trains along the entire corridor as of November 1911. At this time, Seaboard had not received any deed corresponding to the southern portion of the rail corridor, but still operated trains along the entire corridor.
>
> In 1926–27, Seaboard relocated the southern portion of its rail corridor a quarter mile to the east. On April 1, 1927, trains began to run along the relocated rail corridor. Then, on April 4, 1927, Seaboard received a deed from the Brotherhood of Locomotive Engineers pension fund ("BLE") that appears, on its face, to unambiguously convey a fee simple interest in the property corresponding to the relocated southern portion of the rail corridor.[n.2] Seaboard continued to operate trains along the entirety of the rail corridor.
>
> > [N.2] Seaboard also received a deed from the Venice-Nokomis Holding Corporation on November 10, 1941 that purported to transfer the same property that BLE

> transferred to Seaboard in the 1927 BLE deed.

Certification Order, *Rogers v. United States*, No. 2013-5098, -5102, slip. op. at 5-7 (Fed. Cir. July 21, 2014). Thus, with respect to the northern corridor of the railroad, the four, largely identical, deeds-at-issue are the Blackburn Deed, the Phillips Deed, the Frazer Deed, and the Knight Deed. The southern corridor, which presently abuts property owned by Appellant Bird Bay Executive Golf Club ("Bird Bay"), has a more convoluted history involving numerous transactions. The parties agree, however, that the interpretation of only two deeds—the 1927 BLE Deed and the 1941 Venice-Nokomis Deed—are dispositive of whether Bird Bay has a claim to the land-at-issue. *Bird Bay*, 93 Fed. Cl. at 618, 619 n.13.

On December 15, 2003, due to decreased industrial activity in the area, the current operator of the railroad corridor, Seminole Gulf Railway, L.P. ("SGLR"), petitioned the STB to abandon the railroad corridor. On April 2, 2004, the STB issued an NITU invoking § 1247(d) of the Trails Act. Pursuant to the order, SGLR and CSX Corporation, the successors and assigns of Seaboard, granted the Trust for Public Land—a national, nonprofit land conservation organization—the right to convert the railroad corridor into a recreational trail.

Over 100 landowners filed suits alleging that the conversion of the railroad corridor to a public trail under the Trails Act resulted in a compensable taking of their property interests in the railroad corridor. As explained in our Certification Order to the Florida Supreme Court:

> The Court of Federal Claims consolidated all claims into three separate actions, resulting in three separate opinions. Two of those opinions, *Rogers v. United States* ("*Bird Bay*"), 93 Fed. Cl. 607 (2010) and *Rogers v. United States* ("*Rogers*"), 107 Fed. Cl. 387 (2012), are at issue in the present

appeal. In both cases, the plaintiffs asserted that they retained a compensable interest in the property because Florida law limits a railroad's ability to hold an interest in property used for a rail corridor. The government argued that the plain language of the deeds conveyed a fee simple interest to the railroad, and that neither the Florida Supreme Court nor the Florida legislature has expressed a policy preventing a railroad from receiving title in fee simple, regardless of the uses for which the property is conveyed or the circumstances surrounding the execution of the deed.

In *Bird Bay*, the Court of Federal Claims found that the 1927 BLE deed for the southern portion of the railroad corridor conveyed a fee simple interest to Seaboard. In *Rogers*, the Court of Federal Claims similarly held that the 1910 Blackburn, Phillips, Frazer, and Knight deeds conveyed a fee simple interest to Seaboard for the northern portion of the railroad corridor. The Court of Federal Claims concluded, accordingly, that those plaintiffs—the present Appellants—had no compensable property interest for which they could be entitled to compensation upon its taking.

Certification Order, slip. op. at 7-8.[2] Appellants filed timely notices of appeal. We have jurisdiction over this consolidated appeal under 28 U.S.C. § 1295(a)(3).

---

[2]    A third decision, *Rogers v. United States*, 90 Fed. Cl. 418 (Fed. Cl. 2009), has not been appealed. Although we referred to *Rogers v. United States*, 107 Fed. Cl. 38 (Fed. Cl. 2012), as "*Rogers*" in our Certification Order, the parties refer to that case as *Rogers III* and, instead, refer to *Rogers v. United States*, 90 Fed. Cl. 418 (Fed. Cl. 2009) as "*Rogers I.*" To avoid confusion and maintain consisten-

## DISCUSSION

The sole question on appeal is whether the Appellants—the plaintiffs from the *Bird Bay* and the *Rogers III* actions—hold any interest in the land within the subject rail corridor. The parties agree that the answer to that question turns on whether Seaboard acquired fee simple title to the land-at-issue through conveyances from Appellants' predecessors-in-title. *See Bird Bay*, 93 Fed. Cl. at 617 ("For Plaintiff Bird Bay, the first issue—whether the railroad obtained an easement or a fee simple estate—is dispositive.").

The Federal Circuit reviews a decision of the Court of Federal Claims granting summary judgment de novo. *Ladd v. United States*, 713 F.3d 648, 651 (Fed. Cir. 2013). Rule 56(a) of the Rules of the United States Court of Federal Claims ("RCFC") states that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Ladd*, 713 F.3d at 651 (quoting RCFC 56).

We consider whether the United States has made a compensable taking under the Fifth Amendment as a question of law. *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1377 (Fed. Cir. 2008). We analyze the property rights of the parties in a rails-to-trails case under the relevant state law. *Preseault v. United States* (*Preseault II*), 100 F.3d 1525, 1543 (Fed. Cir. 1996) (en banc). Under Florida law, interpretation of instruments like contracts and deeds is generally a question of law. *Peacock Constr. Co. v. Modern Air Conditioning, Inc.*, 353 So. 2d 840, 842 (Fla. 1977). *See also Nourachi v. United*

---

cy with the parties, we refer to *Rogers v. United States*, 107 Fed. Cl. 38 (Fed. Cl. 2012) in this opinion as *Rogers III*.

*States*, 632 F. Supp. 2d 1101, 1110 (M.D. Fla. 2009) (under Florida law, "[t]he interpretation of a deed, including the legal description of the boundaries set forth in the deed, is a question of law for the Court to resolve"). The Federal Circuit gives no deference to legal conclusions made by the Court of Federal Claims regarding either federal or state law. *Barclay*, 443 F.3d at 1372-73; *Hash v. United States*, 403 F.3d 1308, 1312 (Fed. Cir. 2005).

Upon a review of the record and the parties' briefs, we find no error in the Court of Federal Claim's thorough parsing of the language of the four deeds-at-issue governing the northern segments of the railroad corridor (Blackburn, Phillips, Frazer, and Knight) or the two deeds-at-issue governing the southern segment of the corridor (1927 BLE and 1941 Venice-Nokomis). With respect to the northern segments, the court reviewed the text of the Blackburn, Frazer, Phillips, and Knight deeds, and held that "[t]he language could not be clearer—the property owners were conveying all of their interest" in the rail corridor they transferred to Seaboard. *Rogers III*, 107 Fed. Cl. at 395-96. The court noted that the deeds make no reference to an easement or right-of-way (referring instead to a "strip of land"), contain no reversionary clauses, and "unambiguously indicate" that these conveyances "intended to grant fee simple title to Seaboard" through their granting clauses. *Id.* at 395-97. Although it recognized that the Knight Deed, unlike the other three, has a provision stating that the deed would become "null [and] void" if the railroad were not built within five years from the execution of the deed, it properly held that this proviso meant only the conveyance was a fee simple determinable and did not thereby transform an otherwise unambiguous transfer of fee simple title into an easement. *Id.* at 398.

As for the southern segment of the railroad corridor, the court also properly determined that BLE held title to both the railroad corridor (through August 31, 1926 deeds

from Potter and Honore Palmer) and the lands abutting the corridor (through an October 6, 1925 deed from Dr. Fred Albee) when it executed the BLE Deed to Seaboard in 1927. *See Bird Bay*, 93 Fed. Cl. at 618. Because BLE held the land-at-issue in fee simple in 1927, a point not in dispute, and the 1927 BLE Deed transferred "all of its right, title and interest" in "a strip of land" to Seaboard, the court properly determined that the deed appears unambiguously to convey fee simple title. *Id.* Although Appellants argue that a subsequent foreclosure proceeding against BLE in 1934 extinguished any interest Seaboard obtained through the 1927 BLE Deed, we find no error in the court's rejection of this argument on the grounds that the railroad corridor was not part of the lands foreclosed. *Id.* at 620. And we further agree that, even if it were, the 1941 Venice-Nokomis Deed, which was conveyed by the company that foreclosed on BLE's remaining property in 1934, appears on its face to grant the exact same railroad corridor "real estate" back to Seaboard "in fee simple forever." *Id.* at 621. We agree that, even if the 1941 Venice-Nokomis Deed was redundant, it was not a legal nullity because quitclaim deeds may be used to put a doubtful claim to rest. *Id.* at 622.

Despite our conclusions as to what the deeds appear to convey on their face, the question remained as to whether there is any reason under Florida law why a railroad cannot hold fee simple title to land deeded to it by a private party generally or on the facts of this case. The parties hotly contest this point on appeal.

Appellants rely heavily on *Preseault II* for the proposition that a railroad that acquires a right-of-way for its railway track only acquires the estate necessary for the purposes of operating a railway—that is, typically an easement—and that the act of survey and location before the conveyance is the operative determinant of the type of transfer effected by the deed. Appellants argue that, although *Vermont* law guided *Preseault II*, Florida law is

consistent with Vermont law in that it, too, restricts a railroad's eminent domain power by statute. Appellants also contend that Seaboard only acquired an easement and not fee simple because railroads can only use railway land received by voluntary grant "for purposes of such grant only." Rev. Gen. Fla. Stat. § 4354 (1920).[3] According to Appellants, Seaboard received the right-of-way land by voluntary grant because the consideration it exchanged for the deeds was nominal.

Appellants further argue that the Court of Federal Claims' findings violate the common law "strips and gore" doctrine, which it asserts was adopted in Florida by implication and incorporation. *See Seaboard Air Line Rwy. v. Southern Inv. Co.*, 44 So. 351 (Fla. 1907) ("the proprietor of lots abutting on a public street is presumed, in the absence of evidence to the contrary, to own soil to the center of the street") (internal quotation marks and citations omitted); *see also Florida Southern Ry. Co. v. Brown*, 1 So. 512, 513 (Fla. 1887). According to Appellants, this doctrine creates a presumption that owners of parcels of land that are bounded by adjacent public roadways or railways own all the land to the center of the strip, rather than to just the edge of the strip.

In light of a dearth of Florida case law interpreting the property rights of railroad companies, we decided to avail ourselves of Florida's certification procedure to refer these issues to the Florida Supreme Court. Fla. Const. Art. V § 3(b)(6); Fla. Stat. § 25.031; Fla. R. App. P. 9.150(a) (permitting a U.S. court of appeals to certify questions to the Supreme Court of Florida "if the answer

---

[3]    Fla. Stat. § 2241 (1892) (recodified at Fla. Stat. § 4354 (1920); Fla. Stat. § 6316 (1927); Fla. Stat. § 360.01 (1941)). Section 360.01, the last recodification of the statute, was repealed in 1982. See ch. 81-318, § 2, eff. Oct. 1, 1982, Laws of Fla.

is determinative of the cause and there is no controlling precedent of the Supreme Court of Florida"). This decision was not solely on our own initiative:

> Although, [in *Bird Bay*,] the Court of Federal Claims rejected the plaintiffs' argument that Seaboard's status as a railroad prevented it from holding title in fee simple under Florida law, it lamented its inability to certify the question to the Florida Supreme Court. *Bird Bay*, 93 Fed. Cl. at 618 n.11, 622-24. In an earlier takings case under the Trails Act applying Florida law, the Court of Federal Claims also found that the Florida Supreme Court had not yet addressed when and how a private party could convey property to a railroad in fee simple, and similarly expressed a desire to seek resolution of that question directly from the Florida Supreme Court. *Whispell Foreign Cars, Inc. v. United States*, 97 Fed. Cl. 324, 331-34 & n.6 (2011).

Certification Order, slip. op. at 8. We also note that Appellants also raised this option in their Reply Brief. Appellants Reply Br. 26-28 ("should there be uncertainty about the meaning of § 4354 or the common law as applied by the Florida Supreme Court . . . , this Court should certify this issue to the Florida Supreme Court"). Our Certification Order posed the following question of law to be answered by the Florida Supreme Court:

> Assuming that a deed, on its face, conveys a strip of land in fee simple from a private party to a railroad corporation in exchange for stated consideration, does Fla. Stat. § 2241 (1892) (recodified at Fla. Stat. § 4354 (1920); Fla. Stat. § 6316 (1927); Fla. Stat. § 360.01 (1941)), state policy, or factual considerations—such as whether the railroad surveys property, or lays track and begins to operate trains prior to the conveyance of a deed—limit the

railroad's interest in the property, regardless of the language of the deed?[n.1]

> [N.1] While the Appellants dispute wheth-
> er the deeds appear on their face to trans-
> fer a fee simple interest in the properties
> at issue, like the Court of Federal Claims
> before us, we conclude that they do.

Certification Order, slip. op. at 8. The Supreme Court of Florida acknowledged receipt of our certification on July 29, 2014, and on November 5, 2015, issued its answer in a thorough opinion addressing the relevant state law, policy, and factual considerations. The Supreme Court parsed our question into three questions:

> (1) Does section 2241, Revised Statutes of Florida (1892), limit the railroad's interest in the proper-ty, regardless of the language of the deeds?
>
> (2) Does state policy limit the railroad's interest in the property, regardless of the language of the deeds?
>
> (3) Do factual considerations, such as whether the railroad surveys land or lays track and begins running trains before the conveyance of a deed, limit the railroad's interest in the property, re-gardless of the language of the deeds?

*Rogers v. United States*, No. SC14-1465, 2015 Fla. LEXIS 2477, *7 (Fla. Nov. 5, 2015). It answered all three in the negative. *Id.*

On the first question, the Florida Supreme Court examined the relevant statutes, particularly Section 4354 of the Revised General Statutes of Florida (1920), and Florida case law on interpreting deeds. The Supreme Court held that, contrary to Appellants' argument, sub-section (2) of the statute regarding "voluntary grants of real estate" does not apply to this case because a "volun-

tary conveyance" is one made without valuable consideration, and the deeds-at-issue were conveyed for valuable consideration. *Rogers*, 2015 Fla. LEXIS 2477, at \*18. It further quoted *Saltzman v. Ahern* for the well-established rule that, "[i]f there is no ambiguity in the language employed then the intention of the grantor must be ascertained from that language." 306 So. 3d 537, 539 (Fla. 1st DCA 1975). It concluded from its analysis that Florida statutes do not limit Seaboard's interest in the property-at-issue.

On the second question, the Florida Supreme Court found that Appellants' argument that rights-of-way obtained by eminent domain can only be easements does not apply because the lands in question were conveyed by bargain and sale, not eminent domain. The court also rejected Appellants' argument that the nominal consideration exchanged for the land-at-issue indicates the grantors' intent to convey less than fee simple title because Florida law does not consider the amount of consideration to be a basis for questioning the validity of a deed. Finally, the court explicitly stated that it did not need to determine whether and to what extent the "strips and gores" doctrine applies in Florida today because the presumption created by that doctrine "does not apply if[, as here,] a contrary intention is made clear by the language of the deed." *Rogers*, 2015 Fla. LEXIS 2477, at \*29. Thus, the court held that "no policy of the State of Florida limits the railroad's interest in the property regardless of the language of the deed." *Id.* at \*30.[4]

---

[4]    Of note, we also find it is unnecessary to consider the Appellants' argument that the trial court's decision was contrary to the common law "strips and gores" doctrine because Appellants waived the argument by raising it for the first time on appeal before this court. *Fresenius*

Finally, on the third question, the Florida Supreme Court found unpersuasive Appellants' argument, relying on *Preseault II*, 100 F.3d at 153, that a railroad that surveys the land and locates the corridor prior to purchasing the land-at-issue thereby obtains only an easement. The court held that, because Appellants have not shown that, in Florida, a deed for passing fee simple title is limited by the fact that the grantee already occupies the property, "factual considerations [in this case] do not limit the railroad's interest in the property regardless of the language of the deeds." *Rogers*, 2015 Fla. LEXIS 2477, at *34. The Florida Supreme Court then remanded the case back to this court.

Appellants were the ones to suggest that we certify the question to the Florida Supreme Court if there is any doubt as to Florida law. Appellants Reply Br. 26-28. The Florida Supreme Court has now answered, and we find its opinion to have removed all doubt as to the correct result in this case. Its opinion confirms that, under Florida state law, a railroad can acquire either an easement *or* fee simple title to a railroad right-of-way and that no statute, state policy, or factual considerations prevails over the language of the deeds when the language is clear. As explained *supra*, the language of the six deeds-at-issue clearly convey fee simple title to Seaboard on their face.

CONCLUSION

Without further ado, we affirm.

**AFFIRMED**

---

*USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1295 (Fed. Cir. 2009).