PAINE et al. v. CONSUMERS' FORWARDING & STORAGE CO. et al.

(Circuit Court of Appeals, Sixth Circuit.    December 9, 1895.)

No. 256.

DEEDS—DESCRIPTION—LAND BOUNDED ON STREET.

The village of F., Ohio, afterwards called G., was laid out by proprietors, and the public grounds and streets dedicated by executing and recording a plat, in 1812. In 1815, before any lots south of Fourth street were sold, all the streets south of Fourth street were duly vacated by proper proceedings. A., one of the proprietors, became the owner of the part of the vacated tract lying south of Fourth street, and between it and Fifth street, including lots 145 to 152, as numbered on the plat, which lay on the east of Water street, and the lots opposite them on the west of Water street, which were water lots running down to a river. Lots 145 to 152 were described on the plat by dimensions which did not include any part of Water street. The dimensions of the water lots were not given. A., after the vacation of the plat, conveyed two of the lots to one E., by deed describing them as "lots 145 & 146, according to the survey of the town plat of G. which was first recorded, but now lying in the vacated part," referring to the plat for more particular description. By various proceedings, all of A.'s title to the remainder of the tract owned by him, including the streets, became vested in one S., who, during his lifetime, conveyed all but one of the remaining lots to various persons, by deeds describing them by numbers "according to the original map and survey, subject to all the streets and highways," or as the water lots opposite the several numbered lots "according to the original map," etc. The titles of the grantees under these deeds passed to defendants, who occupied the portions of the vacated Water street opposite their respective lots. After the death of S., his heirs quitclaimed their interests in the tract to plaintiffs, who sold the remaining lot, and subsequently sued defendants to recover the land included in Water street. *Held*, that the various deeds, which described the lots by reference to the plat, which showed them bounded by Water street, the statutory dedication of which had been vacated at the time, carried in each case the fee in the land to the middle of Water street, opposite the several lots, notwithstanding the dimensions of the lots did not include the street; and that no title passed to the plaintiffs by the quitclaim from the heirs of S.

2. SAME.

In construing the description in a deed which bounds the land conveyed upon a street, river, or other monument having width, courts incline strongly to such an interpretation of the language as will carry the fee of the land to the center line of such monument, rather than to its edge only.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This action was brought by George E. Paine in his lifetime against the Consumers' Forwarding & Storage Company and the Pennsylvania Dock Company to recover two pieces of real estate in the village of Fairport, Lake county, Ohio. The land in controversy consisted of two parallel strips about 17 feet wide and 571 feet long, lying within the boundaries and on the east and west sides of a vacated street known as "Water Street." The village of Fairport was first known as the town of Grandon, and was laid out in lots on the east bank of the Grand river and the south shore of Lake Erie by the original proprietors. The public grounds and streets were duly dedicated by executing and recording a plat in 1812. In 1815, before any of the lots south of Fourth street were sold, all the streets and public grounds south of Fourth street, except High street, were duly vacated by proper proceedings and decree in the proper common pleas court. The location of the two strips in controversy may be seen from the following diagram, showing a part of the vacated portion of the plat.

Water street is described on the plat as five rods in width. The plat continues: "All the lots laid out in said town between the numbers hereinafter mentioned, inclusive, are of the length and breadth annexed to them, viz. * * * from 137 to 152 are each twenty-four rods long and four rods wide." The measurement excludes from the lots any part of Water street as platted. By deed, the title to the entire tract was vested in one of the proprietors, Samuel Huntington, to hold for the benefit of all. Division was made among the proprietors, and lots were sold by deed pending the trust. Huntington died before the execution of the trust, and in 1836 a bill in equity was filed in the proper common pleas court by those in interest against his heirs to compel a partition, and the conveyance of the legal title in accordance with the previous divisions and sales. Prior thereto, by division and transfer, Seymour Austin, one of the original proprietors, had become the owner of that part of the vacated tract lying between Fourth and Fifth streets. He died, leaving a widow, to whom he devised all his real estate in Fairport. His estate proved insolvent, and on a proceeding to sell land to pay debts all but two of the lots abutting on Water street between Fourth and Fifth streets were assigned as a dower to his widow, and the residuary interest in them was sold to Lemuel Storrs. The widow subsequently quitclaimed to Storrs all land owned by her in the town of Grandon. Austin's administrator and his widow and devisee were made parties to the bill in equity already described, as well as Lemuel Storrs, the purchaser and grantee. By decree, it was found and declared that Storrs had the legal title to all the vacated part of the plat lying between Fourth and Fifth streets, except lots Nos. 145 and 146, which had been conveyed by Seymour Austin in his lifetime to Elihu Spencer, and lots 148 and 149, which Storrs had conveyed before the decree to one Dexter Knight. The Spencer deed described the land conveyed as follows: "Lots 145 and 146, according to the survey of the town plat of Grandon which was first recorded, but now lying in the vacated part of said Grandon, and for a more particular description of said lot, reference must be had to said first recorded survey of said town plat." The Knight deed described the land conveyed as "lots 148 and 149, according to the original map and survey of said town plat, and being in the block between Fourth and Fifth streets in said town plat, subject to all the streets and highways laid or to be laid out on or through the same." Storrs, after the decree, quit-claimed to one Wurts, "lot 150, according to the original map and plat and survey of the town plat of Grandon aforesaid." He deeded to Henry Williams "lots 151 and 152, and also water lots opposite to and westerly of lots 149, 150, 151, and 152 in the original town plat of Grandon (now Fairport), according to the original town-plat survey and maps of the town plat of Grandon aforesaid, subject to all highways." Storrs, by similar descriptions, conveyed lot 145, and water lots opposite to and west of lots 147 and 148. The only

remaining lot abutting on Water street not thus disposed of was water lot opposite lot No. 146, which it appeared that the plaintiff Paine had himself conveyed to one Paige. Thus it appeared by undisputed evidence that plaintiff had no title to the lots abutting on Water street, and the question was whether by the deeds of those abutting lots taking the title out of Storrs and himself title to the land lying in Water street also passed. There was some evidence tending to show a public use of part of Water street between Fourth and Fifth streets at various times, but it had been completely abandoned, and the defendants were admittedly in exclusive possession of it at the time suit was brought. The learned judge at the circuit instructed the jury that the deeds from Austin, Storrs, and Paine, conveying the lots abutting on vacated Water street, carried title to the middle line of Water street opposite the lots specifically conveyed, and therefore that neither Storrs' heirs nor plaintiff had any title to land in Water street or the particular strips in suit. This instruction is made the basis for the chief assignment of error.

R. B. Murray and L. W. King, for plaintiffs in error.

J. B. Burrows, for defendants in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge (after stating the facts). Seymour Austin owned the title to the strips here in controversy. Against his devisee and legal representative, the decree of the common pleas court established that Lemuel Storrs had acquired title to the same two strips. If Storrs did not convey the strips here during his lifetime, they descended on his death to his heirs by whose quitclaim deeds they passed to the plaintiff below. It is conceded that Storrs did not convey any part of Water street to any one by specific description. Did his deeds conveying the lots bounding on vacated Water street convey the fee to the center line of that street? If they did, then the charge of the trial judge was correct; if not, the judgment must be reversed. When Water street south of Fourth street was vacated in 1815, the original proprietors had sold none of the lots abutting thereon. The effect of the vacation, therefore, was to vest the fee in Water street in those who owned the abutting lots. It is well settled that where a grantor bounds the lot conveyed on a described street, and is the owner of the land embraced therein, he is estopped to deny the right of the grantee to use the land for street purposes whether it be in fact a street or not. Thomas v. Poole, 7 Gray, 83; Rodgers v. Parker, 9 Gray, 445; Stetson v. Dow, 16 Gray, 373; Emerson v. Wiley, 10 Pick. 310; Cox v. James, 45 N. Y. 562; Dawson v. Railroad Co., 15 Minn. 136 (Gil. 102); 3 Washb. Real Prop. (5th Ed.) *467, *635, *671; Devl. Deeds, § 1027. And the same effect is given to a deed describing the lot conveyed by number and reference to an undedicated plat upon which the lot is shown to front upon a street. In such a case the easement which the grantee acquires is not limited to that part of the described street in front of his lot, but it extends to the whole street shown so far as it was owned by the grantor when the deed was executed. Rodgers v. Parker, 9 Gray, 445; Thomas v. Poole, 7 Gray, 83; Cox v. James, 45 N. Y. 562. It is quite true that it has been held that such a deed does not bind the grantor to open and maintain a street

in a condition fit for travel (Hennessey v. Railway Co., 101 Mass. 540); nor does it imply a covenant that the street is in such a condition when the deed is made. The only effect is that, as between the grantor and grantee, the latter may do nothing inconsistent with this right. Between them, therefore, it is a street. Nor does it prevent this result that the plat was marked vacated, or that in some of the deeds it was referred to as vacated. The vacation of the plat affected only the public easement. It did not conflict with the use of the street as a common way by all the abutting lot owners. Water street was absolutely necessary to any enjoyment of the lots at all. A steep hill cut off a large part of each of the numbered lots from High street, and the water lots had no frontage except on Water street.

By the common-law rule of construction, a deed of land which describes it as bounding upon a street carries the fee of the grantor to the middle line of the street. 3 Washb. Real Prop. (5th Ed.) 635, where all the authorities are collected. The rule is thus comprehensively stated by Mr. Justice Gray in the case of the City of Boston v. Richardson, 13 Allen, 146, 154:

"Whenever land is described as bounded by other land, or by a building or structure, the name of which, according to its legal or ordinary meaning, includes the title in the land of which it has been made part, as a house, a mill, a wharf, or the like, the side of the land or structure referred to a boundary is the limit of the grant; but when the boundary line is simply by an object, whether natural or artificial, the name of which is used in ordinary speech, as defining a boundary, and not as describing a title in fee, and which does not, in its description or nature, include the earth as far down as the grantor owns, and yet which has width, as in the case of a way, a river, a ditch, a wall, a fence, a tree, or a stake and stones, then the center of the thing so running over or standing on the land is the boundary of the lot granted."

In Banks v. Ogden, 2 Wall. 68, Chief Justice Chase, speaking for the supreme court, said:

"It is a familiar principle of law that a grant of land bordering on a road or river carries the title to the center of the river or road, unless the terms or circumstances of the grant indicate a limitation of its extent by exterior lines."

In Ohio the same general rule is in force. In Lembeck v. Nye, 47 Ohio St. 336, 24 N. E. 686, the question was whether a deed of land bordering on the side of a nonnavigable lake, the length of which was perceptibly greater than its breadth, carried the interest of the grantor in the bottom of the lake to the middle line of the lake, and the court answered it in the affirmative. At page 349, 47 Ohio, and page 686, 24 N. E., Judge Bradbury in delivering the principal opinion in the case says:

"And in this state, where the rule is so firmly established that a boundary on a running stream carries the land to the middle or thread thereof, principles of analogy afford strong grounds for applying it to nonnavigable lakes. The reasons for the rule in one case apply equally to the other. The existence of 'strips or gores' of land along the margin of nonnavigable lakes, to which the title may be held in abeyance for indefinite periods of time, is as great an evil as are 'strips and gores' of land along highways or running streams. The litigation that may arise therefrom after long years, or the

happening of some unexpected event, is equally probable, and alike vexatious in each of the cases, and that public policy which would seek to prevent this by a construction that would carry the title to the center of a highway, running stream, or nonnavigable lake that may be made a boundary of the lands conveyed applies indifferently, and with equal force, to all of them. It would seem, also, that whatever inference might arise from the presumed intention of the parties against the reservation of the land underlying the water would be as strong in one case as in either of the others."

Again, at page 351, 47 Ohio, and page 686, 24 N. E., Judge Bradbury says:

"While, if the parties to a deed make a running stream, a nonnavigable lake, or a highway, one boundary of the lands conveyed by it, public policy and the presumed intention of the parties will extend the line to the middle of such monument, yet it is competent for them to limit the conveyance to the side of the highway, the top of the bank of the running stream, or to the edge of the water of the lake."

See, also, the case of Stevens v. Shannon, 6 Ohio Cir. Ct. R. 142, approved in Kerr v. Commissioners, 51 Ohio St. 593; Dembitz, Land. Tit. § 11; notes to Dovaston v. Payne, 2 Smith, Lead. Cas. 178.

But several reasons are pressed upon the court for holding that this general rule has no application to the case at bar.

First it is said that the principle is never applied except when there is an actual public highway forming a visible monument. The case of Hopkinson v. McKnight, 31 N. J. Law, 427, is relied upon to sustain this proposition. The weight of authority is, however, decidedly to the contrary. In the case of Stark and Wales v. Coffin, 105 Mass. 328, it was held that a deed conveying part of a tract of land as bounded "by a passageway of fifteen feet wide," leading across the tract, with no restriction or controlling words, passes the fee to the center of the way so assumed as a monument, although no such way existed at the date of the deed, or has ever been fenced off, and although the deed provided that the passageway was to be held in common forever by the parties to the deed. In Bissell v. Railroad Co., 23 N. Y. 61, the court of appeals of New York held that the conveyance of a lot bounded on a piece of ground laid out upon a map as a street and called a street, but which was not in fact a public street or highway, carried the grant to the middle of the street. In Jarstadt v. Morgan, 48 Wis. 248, 4 N. W. 27, the owner of land laid out into blocks and lots, bounded by what were represented on an unrecorded or defective plat as streets, conveyed a lot by reference to the plat. Neither of the streets was ever opened and used by the public as a highway, though the full enjoyment of the lots sold required that the streets should be open for the full distance of the block. It was held that, as against the grantor or his assigns, the grantee took the fee to the center of the street abutting on his lots. In Paul v. Carvon, 26 Pa. St. 223, it was held that a deed of a lot described as extending along the northerly side of Tidmarsh street, executed after Tidmarsh street had been vacated by public authority and had reverted to the grantor, carried the fee to the center of the vacated street. These cases clearly show that the same kind of a description in a deed, which estops the grantor to deny the right of the grantee to

use land bordering on the lot conveyed as a street, works a transfer in fee to the grantee of one-half the land embraced in said street.

A second contention of plaintiff in error is based on the provisions of the Ohio statute concerning dedications by a duly acknowledged and recorded plat. Under that statute the acknowledgment and recording of the plat vests the fee of the street in the county or municipal corporation in which the platted street lies. 1 Chase's St. 502; 3 Chase's St. 1846; 1 Smith & B. Rev. St. § 2601. Hence it is argued that the deeds of lots in such a plat could not carry the fee in the street, because it passes to the county or city. But the deeds here in question were not made until after vacation of the plat as a statutory dedication. The reference to the plat was made when both parties knew it to be vacated. Indeed, in some of the deeds it was described as a vacated plat. The reference must therefore be construed in this light. The plat had no efficacy except as a private plat. If the public thereafter had, by actual user of the platted streets, accepted the reference in the deeds as a dedication, it would have been not a statutory, but a common-law, dedication. Fulton v. Mehrenfeld, 8 Ohio St. 440. In such a dedication the fee remains in the grantor, and the public takes only an exclusive easement. We cannot see, therefore, that provisions of the Ohio statutes have any bearing upon the construction of the deeds and their description of the property conveyed by reference to the vacated plat.

Finally it is pressed upon us that by the description in the deeds the vacated street is expressly excluded from the lots conveyed. It cannot be questioned that when a plat is referred to in a deed as containing a description of land, the courses, distances, and other particulars appearing upon the plat are to be as much regarded in ascertaining the true description of the land and the intent of the parties, as if they had been expressly enumerated in the deed. Cox v. Hart, 145 U. S. 376, 12 Sup. Ct. 962; Jefferis v. Land Co., 134 U. S. 178, 10 Sup. Ct. 518. But it is to be observed that the intent of the parties is to be ascertained as of the date of the deed, and the construction of the descriptions in the plat is to be of that date, wherever construction is necessary. It might well be that the plat regarded as a statutory dedication and conveyance would make impossible a construction by which a numbered lot should include one-half the adjoining street, and this because of the peculiar effect of a statutory dedication; and yet a description by lot number on the plat, after it has ceased to have statutory efficacy, made merely for convenience in showing the boundaries and courses and distances of the land to be conveyed, must be construed without regard to the terms or effect of the statute, and exactly as if the description of the lot on the plat by word and drawing had been incorporated into the deed without reference to the plat. The numbered lots conveyed were lots Nos. 137 to 152. They are said in the plat each to be 24 rods long and 4 rods wide. The water lots conveyed are not exactly shown upon the plat, and their lengths are not given. They are all shown to bound upon Water street, and this is exactly equivalent to express language in a deed giving the street as a boundary. Kimball v. City of Kenosha,

4 Wis. 321; Cox v. Railroad Co., 48 Ind. 188; City of Dubuque v. Maloney, 9 Iowa, 450. Now, in the description of the water lots, there is nothing whatever to prevent the operation of the ordinary rule by which a deed conveying a lot bounding on a public or private way carries the fee to the center of the way. It is said that because they are described in the deeds as "opposite to" certain numbered lots, these words imply the existence of a strip of land between the lots conveyed and the numbered lots, which does not pass. These words undoubtedly imply the existence of a passageway or street between the water lots conveyed and the numbered lots, by reference to which the former are designated; and, as already said, the grantor in the deeds and those claiming under him are estopped to deny its existence. But we cannot see how this prevents a construction of the deeds by which the fee in one-half the street, whose existence is thus recognized, shall pass with the lots.

In regard to the numbered lots it is contended that the lengths of the lots as given exclude all the street, and therefore that a conveyance of the lots cannot include one-half of it. Such a circumstance is not usually allowed to overcome the ordinary presumption. In Berridge v. Ward, 10 C. B. (N. S.) 400, it was held by the common pleas court of England that where the land conveyed was described in the deed as "the lot colored red upon an annexed plat," the deed carried with it the fee to the center of the adjoining highway, although no part of the highway was colored red, and although the dimensions of the lot as given in the deeds would exclude the street. In Newhall v. Ireson, 8 Cush. 595, it was held, Chief Justice Shaw delivering the opinion, that where the land conveyed was described as bounding upon a road, the deed carried the fee in the road to the center line, although the calls by distance carried the lot only to the road side. In Peck v. Denniston, 121 Mass. 17, the same court, speaking by Chief Justice Gray, made the same ruling on a similar state of facts. See, also, Cox v. Freedley, 33 Pa. St. 124, and Chatham v. Brainerd, 11 Conn. 60–85. The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older cases. For a very good statement of the present condition of the law on the subject, reference may be had to the new and valuable work of Mr. Dembitz on Land Titles, § 11. Most of the decisions are rested on some peculiarity of phrase in the description, and it is very difficult to lay down any general rules for determining when the grantor has used language sufficiently explicit to exclude from the operation of the deed the fee to the center of the abutting road. The supreme judicial court of Massachusetts has decided that it is impossible, if any respect is to be paid to the principles of the common law of real estate, to hold that a fee in land not described can pass as appurtenant to that which is described. Tyler v. Ham-

mond, 11 Pick. 193.    But in the later cases especially that court has used every device of logic to include in the description of a lot by the side of a road the fee to the center of the road.    It has treated the highway or private way in the description of a lot as a monument, and in obedience to the rule that a reference to monuments controls descriptions by courses and distances it has carried the lot to the center line of the monument, however clear a departure this may be from the linear or superficial measurements.    It would seem from the language of Mr. Justice McLean, speaking for the supreme court of the United States in Barclay v. Howell, 6 Pet. 512, that the difficulty of passing the fee in the adjoining street as appurtenant to the conveyance of the abutting lot did not weigh so heavily on that court, for he said:

"Where the proprietor of a town disposes of all his interest in it, he would seem to stand in a different relation to the right of soil, in regard to the streets and alleys of the town, from the individual over whose soil a public road is established, and who continues to hold the land on both sides of it. Whether the purchasers are not, in this respect, the owners of the soil over which the streets and alleys are laid, as appurtenant to adjoining lots, is a point not essentially involved in this case."

The whole question is most exhaustively discussed by the learned American editors of Smith's Leading Cases (8th Ed., vol. 2, p. 178) in the notes of Dovaston v. Payne, and the conclusion reached that the treatment of the highway as a monument furnishes the means to include the fee to the street center in every case where there is not express language excluding it.    See, also, 3 Kent, Comm. 349.    The wisdom of such a construction is manifest, and the great weight of authority sustains it.

But it is said that there is an authority in Ohio which requires us to hold that the fact that the length of the lot in feet as given in the plat excludes the street, and prevents giving effect to the ordinary presumption.    The case referred to is Lough v. Machlin, 40 Ohio St. 332.    The statement of the case and the conclusion reached are so short that we give them in full:

In April, 1853, a plat of a subdivision of our inlots in the city of Columbus was duly executed, acknowledged, and recorded. It showed, in feet, the length and width of each sublot, and an alley ten feet wide between sublots five and thirteen. By separate deeds describing the premises granted by the number of the sublot and reference to said plat, L. became the owner of one and M. of the other of said sublots. No ordinance accepting said alley was ever passed by the council, but, in March, 1863, it passed an ordinance vacating part of the alley between said lots, on petition of L., the then owner of M.'s lot consenting. L., claiming title to the part of the alley so vacated under a quitclaim deed from the heirs of the original owner of the ground so laid out, built upon it in May, 1863. In 1875 M. sued L. to recover possession as owner in fee simple of so much of the vacated alley as lies between the middle of what was the alley and the line of M.'s lot. Held: (1) Because of section 63, Act May 3, 1852 (50 Ohio Laws, 223) the alley never was a public way. (2) As the dedicator's deed did not, in effect, describe M.'s lot as 'bounded by an alley,' but by the east line of the alley, the rule of construction of deeds making 'a stream' or 'a road' or 'a way,' a boundary, does not apply. (3) As the dedicator's plat and deed under the statutes then in force left the character of the alley to be determined by the council, he was not responsible for the nonaction of that body, and the doctrine of estoppel does not apply. (4) M. does not own in fee any of the vacated part of said alley."

The decision was by the supreme court commission, and the conclusions are stated without an opinion. There would seem to be some difficulty in reconciling the principle which it is said this case establishes with that of Stevens v. Shannon, ubi supra. It is certainly a most unsatisfactory basis for a rule of property in Ohio, and we cannot think the court which rendered it thought it was establishing such a rule. The case was a hard one against the defendant, the grantee of the original dedicator, who had, on the faith of the latter's title to the entire alley, and, it may be inferred, with the consent of the predecessor in title of the plaintiff, erected a house upon it, and occupied it for 12 years before the suit was brought. Principles of estoppel would seem to have required that a deed given by this predecessor to the plaintiff should be construed not to include the abandoned alley upon which L. had built his house, with such predecessor's consent. But the case is distinguishable in more than one respect from the case at bar. The plat in the case cited was a statutory plat, intended to operate as such, and not vacated when the deeds of the dedicator were executed. It did not operate as such because the city did not accept the dedication as the law required it to do before the dedication could become effective; but when the deeds were given it was an inchoate statutory dedication, and the effect of the deeds was to be determined in that light. By such a dedication the fee in the alley would have passed to the city, and therefore the intention of the dedicator to pass the fee to the abutting lot owners might be much more reasonably doubted than in a case like the one before us, in which the reference was to a vacated plat, having no other force than a mere private map. Hence the ruling of the court that the measured width of the lots in effect described the lot as bounded by the east line of the alley instead of by the alley, is not inconsistent with a different conclusion in this case, where the effect of a statute cannot influence the interpretation of the deed and plat.

There are several circumstances, not yet noticed, which serve to confirm the conclusion we have reached. In nearly all the deeds, including those of the water lots, the description of the lots conveyed by reference to the plat closes with this phrase, "Subject to all legal highways." There is not the slightest evidence that the land within the lot lines was subject to any easement of way, public or private, and, unless this refers to the common way for all the lots sought to be reserved in Water street it is difficult to understand its meaning. If such is the reference, then it is clear that the grantors in the deeds supposed that they were parting with all their interest, not only in the land within the lot lines, but also in the street. We have even more persuasive evidence of this in the fact that when the administrator of Seymour Austin, a predecessor in title of the plaintiff, who is admitted to have owned all the land, including Water street, came to sell all his land as the estate of a deceased insolvent, and wished to assign dower to the widow, he petitioned for the sale of all the lots, the appraisement of them, and the assignment of one-third to the widow. No mention was made of land in Water street, although, if that was to be treated as another and distinct lot, it contained as

much as half a dozen platted lots. All the proceedings indicate that Water street was supposed to pass with the abutting lots. Thus there was set off as dower to the widow "all the lots lying between Fourth and Fifth streets of the original town plat of Grandon, which is now vacated." There are other circumstances of like character in the chain of plaintiff's title which indicate a usus loquendi by which the street passed with the lots, but it is unnecessary to refer to them. On the whole case we are satisfied that there was no question of fact in dispute to be submitted to the jury, that as matter of law defendants were entitled to a verdict on the conceded facts, and that the court was therefore right in directing such verdict. The judgment of the circuit court is affirmed, with costs.