

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-17-00405-CV

———————————————————

MARY SHANNON GREEN, IN HER CAPACITY AS TRUSTEE OF THE E.G. SENTER, JR. TRUST 2-A; RICHARD B. WILSON, JR., IN HIS CAPACITY AS TRUSTEE OF THE E.G. SENTER, JR. TRUST 2-B; SHANNON H. ARMSTRONG, IN HER CAPACITY AS TRUSTEE OF THE E.G. SENTER, JR. TRUST 3-A; AND CAROL H. HOLDEN AND JOHN B. HOLDEN, IN THEIR CAPACITIES AS CO-TRUSTEES OF THE E.G. SENTER, JR. TRUST 3-B, Appellants

V.

CHESAPEAKE EXPLORATION, L.L.C., CHESAPEAKE OPERATING, L.L.C., TOTAL E&P USA, INC., TOTAL E&P USA REAL ESTATE, L.L.C., TOTAL E&P USA BARNETT, L.L.C., PEEK DEVELOPMENT, LLC, HENRY N. PEEK, III AND JAMES CAMPBELL COMPANY LLC, Appellees

---

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-284294-16

---

Before Sudderth, C.J.; Meier and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

This appeal from a final summary judgment involves a single question of law: whether a 1972 deed conveyed—in addition to the described land—title to an adjoining 30.591-acre mineral estate under the strip–and–gore doctrine or whether the grantor of the adjoining land intended to retain the mineral estate. We agree with the trial court that as a matter of law, title to the mineral estate vested in the adjoining land's grantee. Therefore, we affirm the trial court's judgment.

## I.    Background

In 1955, E.G. Senter & Company (Senter Company) purchased 85.58[1] acres of land in Arlington, Texas. In 1970, Senter Company conveyed the surface and part of the mineral estate of the eastern 30.591 acres (the Highway Tract) to the State of Texas for the construction of Highway 360, reserving only the "oil, gas[,] and sulphur" under the Highway Tract (the Mineral Tract). The deed provided that Senter Company would be able to access the highway from its remaining 54.95 acres (the Remaining Tract) and would be able to use the highway on the same terms as the public. Senter Company reserved no other minerals under the Highway Tract, and it waived "all rights of ingress and egress to the surface [of the Highway Tract] for the purpose of exploring, developing, mining or drilling."

---

[1]Although the legal description in the deed describes a total of 86.95 acres, that description also notes that 1.37 acres are burdened by a county road, "leaving a net of 85.58 acres of land, more or less."

2

In April 1972, Senter Company conveyed the entire Remaining Tract to Arlington South Properties #2 in fee simple via a general warranty deed, retaining only a vendor's lien. Although that deed is subject to "all easements, restrictions, reservations, and/or zoning ordinances, if any, affecting the" Remaining Tract, nothing in the record indicates that any existed at that time, and Senter Company did not expressly reserve any interest in the Remaining Tract.

E.G. Senter died in 1973. At that time, he owned 100% of Senter Company's stock. That stock was distributed to four testamentary trusts established in E.G. Senter's will: (1) E.G. Senter, Jr. Trust 2-A, (2) E.G. Senter, Jr. Trust 2-B, (3) E.G. Senter, Jr. Trust 3-A, and (4) E.G. Senter, Jr. Trust 3-B (the Senter Trusts).

Through a series of conveyances, the Remaining Tract was later subdivided into four parcels (Lots 1–4), each abutting a part of the Highway Tract (and, thus, the Mineral Tract).

In November 2006, Chesapeake Exploration Limited Partnership entered into two oil and gas leases for Lots 1, 2, and 4 with Peek Development, LLC. Then in June 2007, an independent contractor acting for Chesapeake Exploration obtained oil and gas leases for the entire Mineral Tract from the trustees for the Senter Trusts.[2] In

---

[2]Mary Shannon Green is the trustee of the E.G. Senter, Jr. Trust 2-A, Richard B. Wilson, Jr. is the trustee of the E.G. Senter, Jr. Trust 2-B, Shannon H. Armstrong is the trustee of the E.G. Senter, Jr. Trust 3-A, and Carol H. Holden and John B. Holden, Jr. are co-trustees of the E.G. Senter, Jr. Trust 3-B.

November 2008, Chesapeake Exploration, L.L.C.[3] entered into an oil and gas lease with James Campbell Company LLC covering Lot 3. In 2009, Chesapeake Operating, L.L.C., acting as Chesapeake Exploration's operator, pooled all of these leases into the I-20 JV Unit.

Chesapeake Exploration also obtained a drilling opinion in 2009 indicating that the Senter Trusts had never owned an interest in the Mineral Tract because—by application of the strip–and–gore doctrine to the 1972 deed from Senter Company to Arlington South—Senter Company had conveyed all of its interest in the Mineral Tract to Arlington South along with the Remaining Tract. Accordingly, even though Chesapeake drilled a producing well from the I-20 JV Unit, it never paid any royalties to the Senter Trusts.

The Senter Trusts eventually sued Chesapeake, Total E&P USA, Inc.[4]—to whom Chesapeake Exploration had assigned a working interest in the Senter Trust leases—Peek Development, Henry N. Peek, III,[5] and the Campbell Company for trespass to try title to the Mineral Tract, money had and received, and a declaratory judgment. They also included causes of action against Chesapeake and Total for

---

[3]Chesapeake Exploration, L.L.C. is the successor to Chesapeake Exploration Limited Partnership. We will refer to both of these as Chesapeake Exploration and to all of the Chesapeake entities collectively as Chesapeake.

[4]They also later joined Total E&P USA Real Estate, LLC and Total E&P USA Barnett, LLC. We will collectively refer to all of these parties as Total.

[5]Peek Development had conveyed the mineral estate of Lots 1, 2, and 4 to Henry in January 2009 after entering into the lease with Chesapeake.

trespass and breach of the leases. The Senter Trusts filed a motion for partial summary judgment on their trespass-to-try-title claim arguing that Senter Company's 1972 conveyance of the Remaining Tract to Arlington South did not include the Mineral Tract. Chesapeake and Total filed traditional motions for summary judgment on all of the Senter Trusts' claims, contending that Senter Company had conveyed the Mineral Tract to Arlington South in 1972 by application of the strip–and–gore doctrine; therefore, the Senter Trusts did not have standing to maintain any of their claims.[6] After hearing all of the motions, the trial court agreed with Chesapeake and Total, granted their motions for summary judgment "in full," denied the Senter Trusts' partial summary judgment motion, and rendered a final judgment dismissing all of the Senter Trusts' claims against all parties.

## II. Issues on Appeal

In their first issue, the Senter Trusts claim that the strip–and–gore doctrine cannot apply to the 1972 deed because the Mineral Tract was not significantly smaller than the Remaining Tract when Senter Company conveyed the Remaining Tract to Arlington South. They also argue in their second issue that the strip–and–gore doctrine cannot apply to the 1972 deed because it unambiguously failed to include the Mineral Tract in its description, and they contend that the doctrine applies only to

---

[6]Although Peek Development, Henry, and the Campbell Company did not file their own motions for summary judgment, in responding to the Senter Trusts' motion, Peek Development and Henry urged the trial court to grant both motions in their entirety, and the Campbell Company urged the trial court to grant Chesapeake's.

5

ambiguous deeds. And in the Senter Trusts' third issue, they contend that because the strip–and–gore doctrine cannot apply, they own the Mineral Tract; thus, they argue that not only do they have standing to sue for all of their claims, this court should also render a partial summary judgment for them on their trespass-to-try-title claim. Because all of these issues relate to the single question of law presented in the motions for summary judgment, we will review them together.

### III.    Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c). When both parties move for summary judgment and the trial court grants one motion and denies the

6

other, the reviewing court should review both parties' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

### IV.    Application of Strip–and–Gore Doctrine

Our objective when construing a deed is to give effect to the grantor's expressed intent in the deed's language. *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 321 (Tex. 2000). The strip–and–gore doctrine is used to aid in determining a grantor's intent—not as to the land described in the deed itself, but as to adjoining land not referenced in the deed. *Strayhorn v. Jones*, 300 S.W.2d 623, 638 (Tex. 1957) (holding that the doctrine applies only when a description of the specific strip is not included in the field notes of the adjoining land's conveyance; otherwise, there would be no need to employ a rule of construction or presumption); *see Angelo v. Biscamp*, 441 S.W.2d 524, 527 (Tex. 1969); *Cantley v. Gulf Prod. Co.*, 143 S.W.2d 912, 915 (Tex. 1940); *Red Boot Prod. Co. v. Samson Expl., LLC*, No. 09-14-00191-CV, 2015 WL 5730789, at *5 (Tex. App.—Beaumont Oct. 1, 2015, no pet.) (mem. op.); *Escondido Servs., LLC v. VKM Holdings, LP*, 321 S.W.3d 102, 109 (Tex. App.—Eastland 2010, no pet.); *Glover v. Union Pac. R.R.*, 187 S.W.3d 201, 212 (Tex. App.—Texarkana 2006, pet. denied); *Alkas v. United Sav. Ass'n of Tex.*, 672 S.W.2d 852, 857 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.); *Pebsworth v. Behringer*, 551 S.W.2d 501, 503–04 (Tex. Civ. App.—Waco 1977, no writ); *see also Snoddy v. Bolen*, 25 S.W. 932, 934 (Mo.

1894) ("In the vast majority of cases the rule works out the real intention of the parties at the date of the deed."); 23 Am. Jur. 2d Deeds § 254 ("It is presumed that a party granting land does not intend to retain a narrow strip between the land sold and the boundary line in the absence of express provision to that effect in the deed, especially where the strip is so narrow *as to be of no practical use to the grantor*. This presumption . . . is, however, rebuttable, *the question being purely one of intention*; and when the intention is ascertainable from the face of the instrument or a record, other evidence is not admissible." (emphases added) (footnotes omitted)). The strip–and–gore doctrine applies when

> it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of land that has ceased to be of any benefit or importance to him[;] the presumption is that the grantor intended to include [that] strip in [the] conveyance[] unless it clearly appears in the deed, by plain and specific language, that the grantor intended to reserve the strip.

*Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 909 (Tex. 2017) (quoting *Cantley*, 143 S.W.2d at 915).

Application of the strip–and–gore doctrine is highly policy-driven: it discourages title disputes and prolonged litigation—providing certainty in land titles—and encourages the use and development of real property. *See Angelo*, 441 S.W.2d at 526–27 (emphasizing that doctrine applies when adjoining land ceases to benefit or be important to grantor upon conveyance of land described in deed); *Cantley*, 143 S.W.2d at 915; *see also Johnson v. Arnold*, 18 S.E. 370, 372 (Ga. 1893) ("In the main, the fee in such property under such detached ownership would be and forever continue

8

unproductive and valueless."). Courts have applied the strip–and–gore doctrine's presumption to mineral interests. *See Escondido Servs.*, 321 S.W.3d at 107–09; *Glover*, 187 S.W.3d at 212–13; *Reagan v. Marathon Oil Co.*, 50 S.W.3d 70, 80–81 (Tex. App.—Waco 2001, no pet.); *Krenek v. Texstar N. Am.*, 787 S.W.2d 566, 568–69 (Tex. App.—Corpus Christi 1990, writ denied); *Lackner v. Bybee*, 159 S.W.2d 215, 216–18 (Tex. Civ. App.—Galveston 1942, writ ref'd w.o.m.).

## A. Application of Doctrine Not Limited to Ambiguous Deeds

Although raised in the Senter Trusts' second issue, a threshold question is whether a deed's legal description must be ambiguous for the strip–and–gore doctrine to apply. In *McKee v. Stewart*, the Texas Commission of Appeals held, in an opinion adopted by the Texas Supreme Court, that title to adjoining land not described in a deed's metes and bounds description did not pass to the deed's grantee. 162 S.W.2d 948, 950 (Tex. 1942). Importantly, the court noted that the adjoining land was not a narrow strip or strips but was "substantial in size" and irregular in shape. *Id.* But the court also went on to hold that the strip–and–gore doctrine

> is one of construction to which resort is had only when uncertainty or ambiguity as to the land intended to be conveyed appears on the face of the deed or when the effort to apply the description to the ground gives rise to ambiguity. If there is no ambiguity there is no occasion for construction, and the description speaks for itself.

*Id.* In so holding, the court did not cite strip–and–gore doctrine cases; instead, it cited cases determining the proper location of boundary lines based on deeds' metes and bounds calls. *See Humble Oil & Refining Co. v. Ellison*, 132 S.W.2d 395, 398–99 (Tex.

9

1939); *Gill v. Peterson*, 86 S.W.2d 629, 630–33 (Tex. 1935); *Wilson v. Giraud*, 231 S.W. 1074, 1076–78 (Tex. 1921); *Davis v. George*, 134 S.W. 326, 327–28 (Tex. 1911); *Thomson v. Langdon*, 28 S.W. 931, 931 (Tex. 1894). The *McKee* court tied the holding in *Cantley* to "uncertainty [i.e., ambiguity] because the deed called for a road or a street or a railway right of way as a boundary without by express words indicating whether the grantor intended to convey or to reserve the fee that he owned in the road, street[,] or railway right of way." *McKee*, 162 S.W.2d at 950. The court thus held that the strip–and–gore doctrine could not apply at least in part because the deed contained an unambiguous metes and bounds description that omitted the adjoining land.[7] *Id.*

But fifteen years later, in *Strayhorn*, the supreme court rejected an argument that the strip–and–gore doctrine did not apply because the disputed adjoining land had been omitted from the unambiguous field notes' description in the deed. 300 S.W.2d at 638. The court noted that "[t]he strip[–]and[–]gore doctrine can have application only when the specific strip is not included in the field notes of the conveyance. If it

---

[7]This court has cited *McKee*'s additional ambiguity requirement without actually applying it. *See Woolaver v. Texaco, Inc.*, 594 S.W.2d 224, 224–26 (Tex. Civ. App.—Fort Worth 1980, no writ) (holding that doctrine applied to convey title to land adjoining city lot described as such in deed); *Miller v. Crum*, 314 S.W.2d 389, 391, 395 (Tex. Civ. App.—Fort Worth 1958, no writ) (holding that the property in dispute was not a narrow strip and therefore not of the character contemplated by the doctrine); *see also Naumann v. Lee*, No. 03-11-00066-CV, 2012 WL 1149290, at *4–6 (Tex. App.—Austin Apr. 5, 2012, pet. denied) (mem. op.) (citing *McKee*'s ambiguity requirement and holding that adjoining land did not pass to grantor because (1) the metes and bounds description that did not include the adjoining land precisely described the boundaries and (2) other language in the deed, in which the grantor reserved an easement across the described conveyance, evidenced an intent to retain ownership in the adjoining land that would be benefitted by that easement).

were so included, it would pass under the conveyance." *Id.* Thus, this holding in *Strayhorn* implicitly overruled *McKee*'s holding that the strip–and–gore doctrine applies only when there is an ambiguity in a deed's property description. *See also Paine v. Consumers' Forwarding & Storage Co.*, 71 F. 626, 631–32 (6th Cir. 1895) (noting in a review of the developing doctrine that it applies when description of disputed property is excluded from deed). Rather, as the Texas Supreme Court articulated in *Angelo* and *Strayhorn*, the doctrine applies when the evidence shows that (1) the adjoining land is of a certain character—relatively narrow, small in size and value in comparison to the expressly conveyed land, and no longer of importance or value to the grantor of the larger tract, (2) the adjoining land was not included in the property description in the deed at issue, and (3) no other language in the deed indicates that the grantor intended to reserve an interest in the adjoining land. *See Angelo*, 441 S.W.2d at 526–27; *Strayhorn*, 300 S.W.2d at 638; *see also State v. Williams*, 335 S.W.2d 834, 836 (Tex. 1960); *Moore v. Energy States, Inc.*, 71 S.W.3d 796, 799 (Tex. App.—Eastland 2002, pet. denied); *State v. Arnim*, 173 S.W.2d 503, 508 (Tex. Civ. App.—San Antonio 1943, writ ref'd w.o.m.). No additional showing is needed.

For this reason, we reject any argument that the strip–and–gore doctrine cannot apply here because the deed contains a specific metes and bounds description that fails to include the Mineral Tract, and we also decline to follow any cases so holding. *See McKee*, 162 S.W.2d at 950; *Naumann*, 2012 WL 1149290, at \*5; *Hopkins v.*

11

*State*, No. 03-07-00253-CV, 2009 WL 3806160, at *5 (Tex. App.—Austin Nov. 13, 2009, no pet.) (mem. op.). We overrule the Senter Trusts' second issue.

### B. Mineral Tract Included in Conveyance of Remaining Tract

Because Senter Company did not include a description of the Mineral Tract in the 1972 deed of the Remaining Tract to Arlington South and did not include language in that deed indicating that it intended to reserve ownership in the Mineral Tract, we must determine whether the Mineral Tract is of the type to which the strip–and–gore doctrine's presumption applies. The Senter Trusts contend that the Mineral Tract is not small in comparison to the Remaining Tract. In their brief, the Senter Trusts provide a detailed chart comparing the size ratios between conveyed and adjoining land in a comprehensive list of strip–and–gore doctrine cases.

The Senter Trusts rely primarily on *Angelo*, in which the supreme court held that the grantor of a Beaumont city lot could not have intended to convey an abandoned railroad easement adjoining that lot because the abandoned easement— "commercially valuable property"—was larger and "perhaps" more valuable than the adjoining lot. 441 S.W.2d at 526–27. But it is clear from *Angelo* that the size and location of the abandoned easement were indicators of its value in comparison to the conveyed lot. A tract of land larger than a defined city lot, owned in fee simple, was not likely undevelopable or unusable and thus of no benefit to the grantor.

At least two cases support the proposition that there is no exact size ratio that must be adhered to for the doctrine to apply. In *Pebsworth*, the court applied the

12

centerline presumption—a variant of the strip–and–gore doctrine[8]—to half of an abandoned railroad easement comprising a little over sixty percent of the actually conveyed land. 551 S.W.2d at 502–03. *But cf. Haby v. Howard*, 757 S.W.2d 34, 39–40 (Tex. App.—San Antonio 1988, writ denied) (holding that fact issues regarding value of adjoining property, which was approximately the same size as conveyed property, precluded holding that doctrine applied as a matter of law). And in *Lackner*, the court applied the centerline presumption to adjoining land constituting approximately 1/3 of the conveyed land. 159 S.W.2d at 216–17. None of the cases cited by the Senter Trusts prescribes a rigid formula for the size comparison; rather, each considers the particular property at issue, taking into account the character of the property in light of the policy issues that drive the doctrine.

Here, we conclude that the trial court did not err by determining that Senter Company's conveyance of the Remaining Tract in 1972 must have included the Mineral Tract as well. Although in 1972[9] the Mineral Tract was not significantly smaller than the Remaining Tract—a little over half the size of the Remaining Tract—Senter Company did not own all of the mineral estate underlying the Highway Tract, only the "oil, gas[,] and sulphur." And although during the time Senter Company owned the Remaining Tract it theoretically could have leased its surface to attempt to

---

[8] *See, e.g.*, *Escondido Servs.*, 321 S.W.3d at 106.

[9] We consider the character of the Mineral Tract at the time of conveyance of the Remaining Tract because the doctrine is a tool to glean the deed grantor's intent. *See Escondido Servs.*, 321 S.W.3d at 109.

access the Mineral Tract[10] or could possibly have attempted to pool its interests,[11] after conveying the Remaining Tract to Arlington South, Senter Company could no longer access the Mineral Tract by any means other than pooling—and there is no evidence in the record that pooling was even a possibility for the Mineral Tract in 1972.[12] As the supreme court has explained in a pre-Barnett Shale mineral development case,[13] "Practically speaking, the mineral estate would be wholly

---

[10]"[O]il and gas are fugaceous minerals that will migrate without regard to property lines . . . ." *Browning Oil Co. v. Luecke*, 38 S.W.3d 625, 632 (Tex. App.—Austin 2000, pets. denied) (op. on reh'g). Of course, without access to the Highway Tract for developing the Mineral Tract, Senter Company could do nothing to defend against drainage once it conveyed the Remaining Tract. *See id.* at 632–33.

[11]"Often, if a tract is of insufficient size to satisfy the state's spacing or density requirements [for well locations], lessees will 'pool' acreage from different leased tracts. Pooling allows a lessee to join land from two or more leases into a single unit. Operations anywhere within the unit are treated as if they occurred on all the land within the unit, and production from a well on the pooled unit is treated as occurring on all the tracts pooled into the unit." *Browning*, 38 S.W.3d at 634 (footnote omitted) (citation omitted).

[12]Chesapeake provided evidence that no leasing transactions occurred in Tarrant County between 1972 and 1979 and that only two oil and gas wells actually produced in Tarrant County in 1972—those wells were located approximately 27 miles away from the Mineral Tract and produced at only marginal rates. For this reason, we reject the Senter Trusts' argument that their express reservation of the Mineral Tract when they conveyed the Highway Tract shows an intent not to convey it via the 1972 deed.

[13]Vertical wells predominated Texas's oil and gas production until relatively recently. *See* Jason Newman & Louis E. Layrisson, III, *Offset Clauses in a World Without Drainage*, 9 Tex. J. Oil Gas & Energy L. 1, 1–2 (2013–14). *See generally Elliff v. Texon Drilling Co.*, 210 S.W.2d 558, 561–63 (Tex. 1948) (describing nature of mineral interest ownership in Texas); *Haupt, Inc. v. Tarrant Cty. Water Control & Improvement Dist. No. 1*, 870 S.W.2d 350, 353–55 (Tex. App.—Waco 1994, no writ) (describing available types

worthless if the owner of the minerals could not enter upon the land in order to explore for and extract them."[14] *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 788–89 (Tex. 1995) (citing *Harris v. Currie*, 176 S.W.2d 302, 305 (Tex. 1943)). Were we not to apply the strip–and–gore doctrine because the Mineral Tract was too large—albeit practically worthless for development purposes in 1972—we would have to conclude that Senter Company intended to retain ownership indefinitely in a property interest that to it was inaccessible and then undevelopable, with the future hope that one day it would benefit from that interest, either via pooling or the advent of technology. Such a construction of the 1972 deed not only does not make sense, it goes against Texas's public policy that the State's natural resources should not only be conserved but developed. *See* Tex. Const. art. 16, § 59(a). And as we have said, the strip–and–gore doctrine is a policy-driven presumption.

---

of drilling). The Mineral Tract is located in the Barnett Shale. It was not until 2002—when developers in the Barnett Shale successfully experimented with horizontal drilling and hydraulic fracturing—that development in that area transitioned to horizontal drilling as the primary production method. Newman & Layrisson, 9 Tex. J. Oil Gas & Energy L. at 11–12; Benjamin Robertson, *Top Lease Vultures: Title Failure, Bad Faith Pooling, and the Validity of Top Leases in the Tex. Shale Plays*, 44 Tex. Tech L. Rev. 463, 468 (2012). With horizontal drilling, "off-lease drilling arrangements often provide the most efficient means of fully exploiting the minerals." *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 50 (Tex. 2017). Thus, surface access to every leased mineral estate is no longer critical.

[14]The 1972 deed lists the purchase price of the Remaining Tract as $439,600. In its summary judgment motion, Chesapeake provided an engineer's affidavit, in which he opined that the total market value of the Mineral Tract in 1972 would have been in a range of between $695.33 to $2,086 and that the lower end of the range would have been more appropriate.

We hold that the trial court did not err by determining that the strip–and–gore doctrine's presumption applies to the Mineral Tract. We therefore overrule the Senter Trusts' first issue.

## C. The Senter Trusts' Remaining Claims Fail

Because we conclude that the strip–and–gore doctrine applies here and that it compels the conclusion that as a matter of law Senter Company intended to convey the Mineral Tract to Arlington South in 1972—and therefore no longer owned it when the Senter Trusts entered into the oil and gas leases with Chesapeake in 2007—we also hold that the trial court did not err by granting Chesapeake's and Total's motions for summary judgment and denying the Senter Trusts'. We overrule the Senter Trusts' third issue.

## V. Conclusion

Having overruled the Senter Trusts' issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: December 13, 2018